[Civ. No. 14652. Fourth Dist., Div. One. Jan. 21, 1977.]

ANTHONY W. BRIGHT, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF SAN DIEGO
COUNTY, Defendant and Appellant.

COUNSEL

Robert G. Berrey, County Counsel, and Kent Harvey, Deputy County Counsel, for Defendant and Appellant.

Anthony W. Bright, in pro. per., for Plaintiff and Respondent.

OPINION

BROWN (Gerald), P. J.—The county appeals the judgment granting Anthony W. Bright a peremptory writ of mandate which directs the Board of Supervisors of San Diego County to reconsider its decision of January 8, 1975 denying Bright permission to subdivide his land by parcel map. The only question is whether Bright's proposed division of land is subject to the Subdivision Map Act.

On November 18, 1966, Bright acquired by grant deed a parcel of land, Parcel A, which he holds as separate property. An adjoining parcel, Parcel B, was acquired by Bright and his wife, as joint tenants, on April 29, 1968. On May 7, 1971, by grant deed Bright transferred his interest in a portion of Parcel B to his wife as her separate property. This division created Parcel C. On May 30, 1973, Bright filed a tentative parcel map in which he proposed to divide Parcel A into four lots. In due time he was notified the San Diego Planning Department disapproved his application because it was a subdivision and did not follow the requirements of the Subdivision Map Act. At the time this decision was made, the applicable statute defined a subdivision as ". . . any real property, improved or unimproved, or portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, which is divided for the purpose of sale, lease, or financing, whether immediate or future, by any subdivider into five or more parcels; . . ." (Stats. 1972, ch. 706, p. 1287; formerly Bus. & Prof. Code, § 11535; now Gov. Code, §§ 66424, 66411-12, 66428, 66475.)

The Subdivision Map Act requires a subdivider to file, get approval of and record a subdivision map (Stats. 1943, ch. 128, p. 865, formerly Bus. & Prof. Code, § 11500 et seq; now Gov. Code, § 66410 et seq.). Anyone who offers to sell or lease any part of a subdivision without complying with the act is subject to criminal sanctions (Stats. 1943, ch. 128, p. 868;

formerly Bus. & Prof. Code, § 11541; now Gov. Code, § 66499.31). ■ The purpose of the act is to coordinate planning with the community pattern laid out by local authorities and to assure proper improvements are made so the area does not become an undue burden on the taxpayer (*Pratt* v. *Adams,* 229 Cal.App.2d 602, 606 [40 Cal.Rptr. 505]). Here, the court's reason for granting the writ was the lack of evidence showing there was a common plan of development.[1] ■ However, just as there is no statutory requirement to show the parcel's subdivision will not become a tax burden, there also is no requirement there must be a common plan of development. *Pratt* v. *Adams, supra,* 229 Cal.App.2d 602 concerns persons who freely admitted their land scheme was devised to avoid the application of the Subdivision Map Act. There is no allegation of any conniving here. The trial court erred in directing the board of supervisors to consider whether the parcels were going to be developed together.

■ Was there substantial evidence to support the administrative ruling that Bright's proposed plan is a subdivision? He questions whether the lots are contiguous and whether he is a subdivider. The statute deals with adjoining parcels as shown on the county tax rolls. Here Parcels A and B are adjoining parcels, and they must be considered together. In addition, the division of a parcel must be effected by a subdivider. A "subdivider" was defined at that time in former Business and Professions Code section 11508 (Stats. 1943, ch. 128, p. 866; now Gov. Code, § 66423). " 'Subdivider' refers to a person, firm, corporation, partnership or association who causes land to be divided into a subdivision for himself or for others." Here Bright had caused Parcel B to be divided; he now proposes to divide Parcel A into four lots. This makes Bright a subdivider under the Subdivision Map Act.

Bright suggests the above interpretation means the ownerships have merged and he claims this is impossible since he holds Parcel A as

---

[1]The court's conclusion was: "Respondents' finding that the division of land as proposed by petitioner would constitute a subdivision is not supported by substantial evidence in the light of the whole record inasmuch as there was no substantial evidence as to whether or not contiguous Parcels 'A' and 'B'-'C' were being developed together or whether or not they have common streets or other common planning. Therefore, respondents' decision disapproving Tentative Parcel Map 9260 constitutes an abusive [*sic*] discretion pursuant to Code of Civil Procedure Section 1094.5."

separate property and Parcel B as a joint tenant. However, Parcels A and B retain their integrity as individual parcels insofar as conveyance of each whole parcel is concerned. That is, if Bright wished to convey A or B he would not have to submit a parcel map and split A-B to recreate Parcel A or B before selling it. In addition, the sale of A would not be a split under the map act because there would have been no division of that lot.

Bright argues that if a sale of Parcel A counts as a lot split, then hypothetically one person who was a member of several partnerships which purchased contiguous lots would link them all together and make them subject to the map act even though there was no desire among the partnerships to make an integrated use or division of the land. As noted above the sale of Parcel A is not a lot split. In addition, his concern is not well founded since the definition of "subdivider" includes a *"partnership* . . . who causes land to be divided" not the individual partners.

Bright points out that if two persons owned three lots with one person owning the outer two lots and the second owning the center one each parcel could be divided four ways and a twelve-lot subdivision could be created outside the confines of the Subdivision Map Act. This may be true but any attempt to subvert the act presumably would meet the same fate as the one in *Pratt* v. *Adams, supra,* 229 Cal.App.2d 602.

Bright says if someone bought eight contiguous lots in eight individual transactions he would only be allowed to divide them for sale into four lots. However, there is no merger as Bright seems to suggest. The owner in this situation could sell his eight parcels without being under the map act because there is no division.

Bright complains that as an owner of two contiguous parcels he is penalized because the sale of any one parcel reduces the number of sales he can make in the future. In a sense this is true in that Bright could divide by parcel map the same amount of land into eight rather than four pieces if the lots were not adjacent. However, Bright seems to suggest that he is prohibited from dividing Parcels A and B into more than four lots. This is not the case. His unarticulated complaint is that he does not want his land divisions subject to the Subdivision Map Act. This is understandable in light of the higher standards placed on subdivisions in comparison to parcel maps. The legislative purpose here is to

protect individual transferees as well as the public at large. And its intent is that lot splits such as Bright's are to be subject to increased supervision.

The judgment is reversed and the writ of mandate is ordered to be discharged.

Ault, J., and Whelan, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.