[Civ. No. 45885. First Dist., Div. Three. May 22, 1980.]

GEORGE I. BENNY, Plaintiff and Appellant, v.
CITY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

Marshall W. Krause, Richard M. Grant, and Krause, Timan, Baskin, Shell & Grant for Plaintiff and Appellant.

Carter J. Stroud, City Attorney, for Defendants and Respondents.

**OPINION**

**SCOTT, J.**—George I. Benny appeals from the denial of his petition for writ of mandate, wherein he sought an order that the City Clerk of Alameda certify approval of his tentative subdivision map. ▮ Appellant contends that ordinances of the City of Alameda requiring

compliance with certain conditions before a tentative subdivision map can be filed are in violation of the state Subdivision Map Act (Gov. Code, § 66410 et seq.).[1]

Appellant contracted to purchase an apartment complex in the City of Alameda which he intended to convert to a condominium. ■ A condominium project is a subdivision as defined by section 66424 of the Subdivision Map Act. The procedures of that act are required to be followed for the conversion of apartments into condominiums. (See *Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488 [126 Cal. Rptr. 659].)

The Subdivision Map Act requires that a subdivider first file a tentative map with the local "advisory agency," defined as the official or body charged with investigating the proposed division and imposing conditions, or having the authority by local ordinance to approve, conditionally approve, or disapprove the map. (§§ 66415, 66452.) A tentative map is made for the purpose of showing the design and improvement of a proposed subdivision and the existing conditions in and around it. (§ 66424.5.)

If the advisory agency is not empowered by local ordinance to approve or disapprove the tentative map, it must submit a written report on the map to the legislative body which does have the decision-making power. That report must be submitted within 50 days after the map is filed with the advisory agency. (§ 66452.1, subd. (a).) The legislative body also has a limited time within which it must act on the map; it must approve, conditionally approve, or disapprove the map within 30 days after it receives the advisory agency's report. (§ 66452.2.) If no action is taken by the legislative body within the time limits specified, the tentative map as filed is deemed approved, insofar as it complies with other Government Code requirements and local ordinance. (§ 66452.4.)[2]

Once a tentative map has been approved or conditionally approved, a final map must then be submitted and approved. A subdivider is prohib-

---

[1] Unless otherwise specified, all statutory references are to the Government Code.

[2] If the advisory agency is authorized by local ordinance to approve, conditionally approve, or disapprove the map, it must make its decision and report it to the subdivider within 50 days after the map is filed, or the map is deemed approved as filed. (§§ 66452.1, subd. (b), 66452.4.)

ited from selling any parcels within the subdivision until approval of the final map. (§ 66499.30; see *Carmel Valley View, Ltd.* v. *Maggini* (1979) 91 Cal.App.3d 318, 320 [155 Cal.Rptr. 208].)

In Alameda, the planning board is the advisory agency which reviews subdivision maps and makes its recommendation to the city council; the city council has the authority to approve, conditionally approve, or disapprove the maps. It is the filing of a tentative map with the planning board that triggers the 80-day period within which the city council must act on that map. By local ordinance, however, Alameda has imposed conditions which must be met by a subdivider *prior* to that filing. Section 11-3110(f) of the Alameda Municipal Code provides: "No [tentative] maps may be filed until necessary zoning approvals have been secured and an environmental impact report, if required, has been certified for the project covered by the application."

In his petition for writ of mandate filed March 15, 1978, appellant alleged that on January 23, 1978, he *filed* a tentative map application with the city's planning board. He further alleged that the board failed to make any written recommendations to the city council within the requisite 50-day period. He contended, therefore, that the map should be deemed approved. At the hearing on the petition, local ordinances were introduced and the parties agreed that the zoning approval had not been obtained before the map was submitted to the planning board. Consequently, the map had never been "filed" according to the requirements of the local ordinance. It appears, therefore, that the specified time periods had not begun to run. ■ Appellant then urged below, as he does here, that the city's requirement for zoning approval prior to filing of his tentative map was void as it imposed a condition inconsistent with the requirements of the Subdivision Map Act.

■ We start with the general presumption of validity and constitutionality of a city's ordinances, and every intendment will be indulged in their favor, except where it appears that they transcend a city's power or deny to a citizen a right accorded by the Constitution or other laws. (*Longridge Estates* v. *City of Los Angeles* (1960) 183 Cal.App.2d 533, 539 [6 Cal.Rptr. 900].)

■ The Subdivision Map Act establishes general statewide criteria for land development planning, and delegates authority to cities and counties to regulate the details of subdivisions. (*Carmel Valley View,*

*Ltd.* v. *Maggini, supra,* 91 Cal.App.3d at p. 320.) Its purpose is to co-ordinate planning with the community pattern laid out by local authorities, and to assure proper improvements are made so the area does not become an undue burden on the taxpayer. (*Bright* v. *Board of Supervisors* (1977) 66 Cal.App.3d 191, 194 [135 Cal.Rptr. 758].)

■ The Subdivision Map Act expressly empowers local agencies to enact certain types of supplemental ordinances (e.g., § 66411: local agencies have power to regulate and control the design and improvement of subdivisions). The power to adopt supplemental ordinances in connection with matters covered by the act may also be implied, provided those regulations bear a reasonable relation to the purposes and requirements of the act and are not inconsistent with it. (*Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 505 [113 Cal.Rptr. 539].) However, local ordinances which are inconsistent with the language and apparent intent of the Subdivision Map Act are invalid. (*Friends of Lake Arrowhead* v. *Board of Supervisors, supra,* at p. 505.) For example, in *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564 [43 Cal.Rptr. 86], the court held that imposition of a fee as condition precedent to approval of a final map was invalid when the fee was to be used for general city benefits. "'The purpose and intent of the Subdivision Map Act is to provide for the regulation and control of the design and improvement of a subdivision . . . and not to provide funds for the benefit of an entire city.'" (*Id.,* at p. 572.)

■ Appellant argues that the ordinance requiring zoning approval prior to filing of a tentative map is inconsistent with the Subdivision Map Act. He acknowledges the power of the city council to condition its approval of a map upon compliance with zoning regulations, but insists that requiring such approval prior to filing is somehow improper. His argument is that demanding prior zoning approval subverts the time limitations of the act. He argues that these time limitations are critical to the end that the interest of society, the landowner and the consumer can be efficiently served, i.e., by requiring prompt action by local bureaucracies on subdivision map applications. Appellant's argument might have some validity if the Subdivision Map Act mandated only approval or conditional approval of a tentative map within the requisite period. However, the city also complies with the requirements of the act even if it disapproves a map within the specified time. The city's ordinance preconditioning the filing of a tentative map on compliance

with zoning regulations is consistent with its undisputed authority to disapprove a map when a project does not conform to zoning ordinances, or to condition its approval on future compliance. The city's procedure facilitates its decision-making process, as less planning board and city council time need be spent reviewing nonconforming subdivision proposals which at best can only receive conditional approval. We conclude that appellant's contention that the local ordinance is invalid is without merit.

There is an additional ground upon which the court could have properly denied appellant's petition for writ of mandate. ■ Two basic requirements are essential to the issuance of a writ of mandate: (1) a clear, present and usually ministerial duty upon the part of the respondent, and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].) As a general rule mandate will not lie in the absence of a *present* duty to act, although the remedy may be sought when it is clear from the circumstances that the public officer does not intend to comply with his obligation when the time for performance arrives. (*Young* v. *Gnoss* (1972) 7 Cal.3d 18, 21 [101 Cal.Rptr. 533, 496 P.2d 445], cert. den. 409 U.S. 915 [34 L.Ed.2d 176, 93 S.Ct. 236].)

We assume only for purposes of this discussion that the local ordinance was invalid and appellant's map was "filed" when submitted on January 23. The planning board, as an advisory agency without authority to approve, conditionally approve, or disapprove the map, was then required to make its written report on the tentative map to the city council within 50 days after that filing (§ 66452.1, subd. (a)); the board failed to act within this period. ■ The failure of the advisory agency to act within 50 days is deemed an approval of the tentative map *only* when that body is authorized by local ordinance to approve, conditionally approve, or disapprove the tentative map. (§ 66452.4.) The statute is silent as to the effect of the agency's failure to act when, as here, it has no such final authority. It appears, however, that a reasonable interpretation of these statutory procedures would be that failure of the advisory agency to act within 50 days triggers the 30-day period within which the legislative body must act (§ 66452.2); the failure of that body to act within 30 days would be deemed an approval of the map (§ 66452.4).

Therefore, even if appellant's map had been properly "filed" on January 23, the planning board had until March 14 to act (50 days), and the city council had 30 days thereafter within which it was required to act. The petition for writ of mandate was filed on March 15, well within that period. Consequently, it appears that the petition for writ of mandate could also have been denied for failure to establish any present duty to act.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied June 20, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1980.