[Civ. No. 46419. First Dist., Div. One. Feb. 25, 1981.]

BISHOP, McINTOSH & McINTOSH, Plaintiff and Appellant, v. ORVILLE N. MOLMEN, as Tax Collector, etc., Defendant and Respondent.

COUNSEL

Joan M. McGuire, Weld & Freeland and Robert S. Beach for Plaintiff and Appellant.

Iver E. Skjeie, County Counsel, and Henry I. Jorgensen, Deputy County Counsel for Defendant and Respondent.

OPINION

**GRODIN, J.**—The Revenue and Taxation Code provides, in section 5096, subdivision (b) that on order of a county's board of supervisors, property taxes which have been "[e]rroneously or illegally collected" are to be refunded. Section 5097 provides, however, that "(a) No order for a refund . . . shall be made, except on a claim: . . . (2) Filed within four years after making of the payment sought to be refunded or within one year after the mailing of notice as prescribed in Section 2635, whichever is later." Section 2635 provides that "The tax collector shall give notice by letter to the taxpayer . . . where his records show that, with respect to particular property, taxes might have been: . . . (b) Erroneously or illegally collected." The question presented here is whether a taxpayer who claims that the assessed value of his property should have been lower for certain years because it was subject to a scenic easement, but who has pursued no remedies within the four-year limitation period, is entitled to a writ of mandate compelling the tax collector to send a section 2635 letter in order to renew his right to file a claim. The trial court entered judgment denying the writ, and we affirm.

*Background*

Appellant is a partnership which owns the Laguna Seca Golf Course in Monterey County. In 1970 appellant appealed its tax assessment to

the county board of equalization, but while the appeal was pending it entered into a stipulation with the county assessor, approved by the county board of equalization, that the "full cash value" of the property at that time was $576,000. The assessed value of the parcel, on the basis of that stipulation, was $144,000. In succeeding years the assessed value was increased each year (by the county assessor and not by stipulation) so that by fiscal 1975-1976 the assessed valuation was $175,000.

Appellant filed an appeal from the assessment of its property with respect to the fiscal year 1976-1977, and again entered into a stipulation for assessment, approved by the county assessment appeals board, this time for a substantial reduction in the amount of the assessed value to $87,130. The stipulation, filed with the county clerk on June 3, 1977, recites, "This public golf course qualified as a conservation and scenic easement property dated December 8, 1969, and is a profit enterprise. Therefore, the present worth of its current and anticipated future net income indicates a current market value as stated above."

On October 26, 1977, appellant's counsel wrote to respondent, the county tax collector, as follows: "It has recently come to our attention that this property may have been erroneously or illegally overtaxed for all fiscal years 1969-70 through 1975-76, because the law concerning the taxation of property covered by Scenic Easement (which this property is) was not followed in valuing the property. In our opinion the property was so overtaxed, while in the Assessor's present opinion it was not. In order that we may resolve this matter on the merits, it is necessary that the taxpayer file a Claim for Refund with the County. A prerequisite to filing this Claim is that you, as Tax Collector, give notice to the taxpayer, pursuant to Revenue and Taxation Code 2635, that these taxes might have been erroneously or illegally collected, and that if he wishes the taxpayer may file a Refund Claim pursuant to Rev. & Tax. Code 5096. [¶] This letter is a request that you send such a letter to the taxpayer. I am enclosing a draft of such a letter for your consideration and assistance. County Counsel and I both consider the sending of such a letter a ministerial act on your part and in no way determinative of the issue, which can only be determined in connection with the Claim for Refund."

The tax collector responded by letter stating: "A review of the tax rolls for fiscal years 1969 through 1977 does not indicate that property

tax on parcel 173-071-17 was erroneously or illegally collected within the meaning of section 2635 of the Revenue and Taxation Code. [¶] Your client in 1969 and subsequent years could have requested the Assessment Appeals Board [to] consider information he felt might result in a reduction of the assessed value of the parcel."

Thereafter, appellant brought this proceeding in Monterey County Superior Court for a writ of mandate to compel the tax collector "to give notice by letter to [appellant] that the tax collector's records show that taxes paid by [appellant on the parcel in question] may have been erroneously or illegally collected for fiscal years 1970-1971 through 1975-1976" as required by Revenue and Taxation Code section 2635. After hearing, at which evidence was introduced through exhibits by stipulation, the trial court gave judgment denying the writ. This appeal followed.[1]

*Discussion*

Revenue and Taxation Code section 2635 as relevant here provides for the giving of notice to the taxpayer by the tax collector *"where his records show* that, with respect to particular property, taxes might have been: . . .(b) *Erroneously or illegally collected."* (Italics added.)

It appears from appellant's brief that the basis upon which it would claim erroneous or illegal collection of taxes is section 423 of the Revenue and Taxation Code, which provides, with certain exceptions, that in valuing "enforceably restricted open-space land," the county assessor "shall not consider sales data on lands, whether or not enforceably restricted, but shall value such lands by the capitalization of income method" in a manner prescribed by that section. The record in

---

[1]On December 7, 1977, appellant filed a claim with the Monterey County Board of Supervisors for a refund of all property taxes paid on the golf course for fiscal years 1969-1970 through 1975-1976. The board denied that claim on January 24, 1978, and in a separate proceeding appellant instituted an action against the county for refund of taxes alleged to have been erroneously collected in those years. According to appellant's brief, that action remains pending, awaiting the outcome of this appeal.

Appellant concedes that its sole purpose in seeking to compel issuance of a section 2635 letter is to revive the limitations period insofar as it has otherwise expired, so as to remove an obstacle to the underlying action. Appellant also concedes that its claim in the underlying action has merit, if at all, only with respect to years other than 1969-1970 and 1970-1971, and that revival of the limitations period for years after 1972-1973 is not necessary. Consequently, in this appeal appellant seeks reversal of the trial court's ruling only insofar as it pertains to the years 1971-1972 and 1972-1973.

this proceeding contains no facts relating to that claim, other than the stipulation filed with the county clerk on June 3, 1977.[2]

It likewise appears from appellant's brief that the sole basis upon which it claims the tax collector's records show the asserted error or illegality is that the records contain appellant's letter of October 26, 1977. "Of course," appellant argues, "the October 26, 1977 letter is part of the Tax Collector's 'records'; of course it shows him, with reasons, that the taxes in question *might* have been illegally or erroneously collected; of course he is required, based on information contained in the letter,...to give Bishop the notice required of him by § 2635."

■ Appellant's argument is ingenious, but not persuasive. While the Legislature in enacting the present version of section 5097, subdivision (a)(2) clearly intended to extend or revive the otherwise applicable period for the filing of a tax refund claim in cases in which the tax collector gives notice pursuant to section 2635,[3] it seems unlikely that it intended to permit taxpayers to resurrect otherwise time-barred claims by the simple device of sending a letter to the tax collector asserting some error or illegality. If appellant's theory were correct, there would be no limitation upon the period within which claims could be thus revived, and the four-year limitation period would be meaningless.

Appellant argues that the tax collector's duty to send a section 2635 notice is "ministerial" and consequently subject to compulsion through writ of mandate. For purposes of analysis we assume appellant is correct on this point, but the assumption leads us to an opposite conclusion on the merits. Since a tax collector does not exercise independent judgment or discretion with respect to the legality or propriety of particular assessments, the Legislature could hardly have intended to vest that office with broad discretion in evaluating prospective claims for the purpose of deciding whether to send a section 2635 notice. The fact that section 2635 imposes such a duty upon the tax collector only *where his records show* the potential for a claim within the scope of that section

---

[2] Appellant's brief asserts, without record citation, that it became aware of the provisions of Revenue and Taxation Code section 421 et seq. for the first time through advice of counsel during the pendency of the second appeal.

[3] As originally enacted in 1963, section 2635 contains reference to the statutory claims period prescribed by section 5097, subdivision (a)(2), but in 1967 section 2635 was amended to eliminate that reference; and, at the same time, section 5097 was amended to include its present alternative of filing a claim "within one year after the mailing of notice as prescribed in Section 2635." (Stats. 1967, ch. 746.)

evidences a legislative intent to limit the tax collector duties in this regard.

Whether or to what extent the tax collector's "records" for this purpose may embrace matters beyond the tax rolls, it would strain the statute too far to hold that the tax collector should be compelled by writ of mandate to send a section 2635 notice on the basis of the allegations contained in appellant's letter. "[I]t is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that their assessments are both regularly and correctly made." (*Utah Construction Co. v. Richardson* (1921) 187 Cal. 649, 654 [203 P. 401].) "Inasmuch as there is not a particle of evidence ... that an improper method of valuation was pursued" (*id.*, at p. 655),[4] we find no error in the denial of the writ. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1012 [164 Cal.Rptr. 776].)

The judgment is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.

---

[4]Respondent argues that failure to appeal to the local board of equalization should bar appellant's claim, but we do not reach that question. Exhaustion of administrative remedies was not raised as a defense below.