TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
        :

OPINION        :

        :

of        :

        :

JOHN K. VAN DE KAMP    :    No. 88-201
Attorney General    :

        :    MAY 5, 1988

RODNEY O. LILYQUIST    :
Deputy Attorney General    :

        :

-------------------------------------------------------------------

THE HONORABLE HENRY J. MELLO, MEMBER, CALIFORNIA SENATE, has requested an opinion on the following question:

Does Government Code section 66487 constitute express legislative authorization for the cost of a storm drainage improvement to be paid by a school district to a city for the reimbursement of a subdivider?

CONCLUSION

Government Code section 66487 constitutes express legislative authorization for the cost of a storm drainage improvement to be paid by a school district to a city for the reimbursement of a subdivider.

ANALYSIS

The Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Act")[1] establishes general statewide criteria for land development. It grants authority to cities and counties to determine the compatibility of the design of a proposed subdivision in relation to the surrounding area. Under the Act's provisions a subdivider may be required to construct public improvements such as streets and sewers and to donate land or money for public facilities such as schools and

_____

[1]All references hereafter to the Government Code are by section number only.

parks. The requirements of the Act and local ordinances adopted thereunder are administered and enforced through a system in which the subdivider files maps of the proposed subdivision with the governing city or county for its approval. (See The Pines v. City of Santa Monica (1981) 29 Cal.3d 656, 659; John Taft Corp. v. Advisory Agency (1984) 161 Cal.App.3d 749, 755; Simac Design, Inc. v. Alciati (1979) 92 Cal.App.3d 146, 157-158; Bright v. Bd. of Supervisors (1977) 66 Cal.App.3d 191, 194; Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) §§ 1.1, 1.5-1.7, pp. 1-2, 6-7; 2 Longtin, Cal. Land Use (2d ed. 1987) § 6.03, pp. 583-584.)

Not only may a subdivider be required to construct improvements benefiting the proposed subdivision, he or she may be required to install improvements benefiting property not within the proposed subdivision. Section 66485 states:

"There may be imposed by local ordinance a requirement that improvements installed by the subdivider for the benefit of the subdivision shall contain supplemental size, capacity, number, or length for the benefit of property not within the subdivision, and that those improvements be dedicated to the public. Supplemental length may include minimum sized offsite sewer lines necessary to reach a sewer outlet in existence at that time."

The question presented for analysis concerns a school district having property near a subdivision. The property benefits from a "supplemental size" storm drainage system constructed by the subdivider under the terms of section 66485. May the school district be charged a fee to help defray the cost of the "supplemental" construction? We conclude that it may.

Besides section 66485, two other statutes require examination and interpretation. Section 66486 provides:

"In the event of the installation of improvements required by an ordinance adopted pursuant to Section 66485, the local agency shall enter into an agreement with the subdivider to reimburse the subdivider for that portion of the cost of those improvements, including an amount attributable to interest, in excess of the construction required for the subdivision."

Section 66487 states:

"In order to pay the costs as required by the reimbursement agreement, the local agency may:

"(a) Collect from other persons, including public agencies, using such improvements for the benefit of real property not within the subdivision, a reasonable charge for such use.

"(b) Contribute to the subdivider that part of the cost of the improvements that is attributable to the benefit of real property outside the subdivision and levy

2.                                                                                                88-201

a charge upon the real property benefited to reimburse itself for such cost, together with interest thereon, if any, paid to the subdivider.

"(c) Establish and maintain local benefit districts for the levy and collection of such charge or costs from the property benefited." (Emphasis added.)

Analysis of the present inquiry depends upon the language of subdivision (a) of section 66487 as it is interpreted in light of the recent case of San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154. In San Marcos the Supreme Court noted that school districts were exempt from paying property taxes but were subject to "user charges." In a middle category were "special assessments," payable by the districts if the Legislature expressly authorized their collection from public entities. (Id., at pp. 160-161.)

The court pointed out that normally a special assessment (1) covers the cost of constructing a capital improvement, (2) is based upon the value of the improvement to the property benefited, (3) is compulsory in nature and unrelated to actual use of the improvement, and (4) is often imposed as a one-time charge. The court observed that a typical user fee (1) covers the furnishing of goods or services, (2) is based upon the amount of usage, (3) is voluntary in nature since actual use triggers the fee, and (4) is often imposed as a monthly or other ongoing charge. (Id., at pp. 161-162.)

Some fees, however, have characteristics of both a special assessment and a user charge. The court concluded that as for these hybrid fees, it was not significant what the fees were called, upon whom they were imposed, or the basis upon which they were assessed. Rather, the court concluded that the use of the revenues collected determined whether they were special assessments or user charges. If the fees were to help defray the costs of constructing a capital improvement, they were special assessments and required express legislative authorization to be collected from a public entity. If the fees were to help pay for ongoing services provided, they were user charges, and no express authorization was necessary. (Id., at pp. 163-165.)

The evident purpose of sections 66485-66487 is to construct public improvements such as water and sewer lines and storm drains serving a subdivision with increased capacity to serve land outside the subdivision and to reimburse the subdivider by charging the owners of land outside the subdivision who are benefitted by such increased capacity for the supplemental construction costs. Following the San Marcos case we conclude that a charge to a school district by a city to pay for the cost of the increased capacity of a storm drain in a subdivision necessary to serve the land owned by the school district outside the subdivision is a special assessment whether it is based on use or other criteria. The fact that section 66487(a) authorizes the charge only against those "using" the improvements and the charge is to be "for such use" does not change the character of the charge as a special assessment. Under the San Marcos case an express authorization from the Legislature is necessary to charge such a special assessment against a public entity such as a school district. In the San Marcos case there was no such express authorization. In section 66487(a), however, the Legislature has expressly provided that

the special assessment authorized by the section may be levied against public entities by specifying "including public agencies" among those who may be charged.

The school district argues that subdivision (a) of section 66487 only authorizes the collection of user charges and not special assessments. The statutory language indeed limits its applicability to "persons, including public agencies, using such improvements" and the collection of "a reasonable charge for such use."

San Marcos, however, pointed out that a special assessment could be based upon the amount of usage of a public improvement:

> "In Regents I and Regents II, the capital improvements charge was assessed only to users of the sewer system, yet the courts found the charge to be an assessment. By placing the emphasis on the purpose of the charge, the courts in those cases created a rule which both conforms to the policy behind the implied exemption for public entities, and avoids easy manipulation. A contrary ruling would, in effect, abrogate the public entities' implied exemption from assessments by sewer districts. Under the rule we adopt, no matter how the form of the fee is varied (i.e., whether based on actual or anticipated use, or unrelated to use; whether a one-time fee or monthly fee; and whether charged to all property owners or only to users of the sewer system), the purpose of the fee will determine whether or not public entities are exempt from paying the fee. In sum, a fee aimed at assisting a utility district to defray costs of capital improvements will be deemed a special assessment from which other public entities are exempt." (Id., at pp. 164-165.)

When section 66487 refers to the fee being "for use," it means that the fee is to be based upon usage. It does not signify the purpose for which the revenues are to be collected; "use" is not the object for which the revenues will be expended. Under sections 66485-66486 the fee is collected to pay for the cost of constructing the supplemental size of the capital improvement. Section 66487 does not change this fundamental purpose of the fee. Accordingly, the Legislature has expressly authorized the collection of a special assessment from public agencies in subdivision (a) of section 66487.

Our interpretation of section 66487 gives consistency to the statutory scheme as a whole. The contrary conclusion would make the fee a special assessment for some purposes and a user charge for other purposes. San Marcos does not allow for such dual classification. It is a fundamental rule of statutory interpretation that "[a] statute must be construed 'in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts.'" (People v. Woodhead (1987) 43 Cal.3d 1002, 1009; see People v. Craft (1986) 41 Cal.3d 554, 560.)

Moreover, our interpretation gives meaning to the phrase "including public agencies" in section 66487. The contrary conclusion would render the phrase nugatory. "It is

a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute . . . ."  (People v. Woodhead, supra, 43 Cal.3d 1002, 1010.)  "A construction of a statute that renders some of its words surplusage . . . is to be avoided."  (Schmidt v. Superior Court (1987) 43 Cal. 1060, 1067.)

Finally, we note that the Legislature has recently enacted chapter 53, Statutes of 1988 as an urgency measure adding sections 54999-54999.6.  This new statute provides express authorization to impose fees for capital facilities construction costs to provide public utility services against public entities but also enacts certain limitations on increasing or imposing new fees after July 21, 1986.  These limitations will be applicable to the charges imposed against public agencies under section 66487(a).

In answer to the question presented, therefore, we conclude that section 66487 constitutes express legislative authorization for the cost of a storm drainage improvement to be paid by a school district to a city for the reimbursement of a subdivider.

\* \* \* \* \*