TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 18-902 |
| of | : | March 24, 2022 |
| ROB BONTA Attorney General | : | |
| MANUEL M. MEDEIROS Deputy Attorney General | : | |

THE HONORABLE LISA A. TRAVIS, SACRAMENTO COUNTY COUNSEL, has requested an opinion on a question related to the Subdivision Map Act.

## QUESTION PRESENTED AND CONCLUSION

If a subdivider owns one parcel and subdivides that parcel pursuant to a parcel map (that is, into four or fewer parcels), then sells all of the resulting subdivided parcels, and subsequently acquires a contiguous parcel and seeks to divide that parcel pursuant to a parcel map, should the local agency count the previously subdivided parcels as part of the second application?

Yes. In this situation, the local agency should count the parcels created by the first subdivision as part of the second application.

## BACKGROUND

The subdivision of land is a key component of land development. As one commentator has observed, "[t]he subdivision of land—designating lots and laying out

1

18-902

streets—is the aspect of development which most permanently and significantly sets the pattern for the development of a community."[1]

California began regulating the mapping of subdivisions in 1893, and first enacted a comprehensive "Subdivision Map Act" in 1937.[2] The Act prohibited the sale of subdivided land without prior government approval of the subdivision, and authorized local governments to regulate the "design and improvement of subdivided property."[3]

Reflecting the potential impact of development, the Act's purposes are manifold:

[A] primary goal of the Map Act and local subdivision ordinances is to encourage orderly community development by providing for the regulation and control of the design and improvement of a subdivision, with proper consideration of its relation to adjoining areas. . . . The Map Act facilitates coordination of subdivision planning (including, e.g., lot size and configuration, street patterns, and utility easements) with the overall community planning shown on the general and specific plans adopted by the city or county. . . . A related purpose of the Act is to ensure consistency of subdivision design and improvement with applicable local standards for development type and density, public health, and other environmental concerns.

---

[1] Comment, *Land Development and the Environment: The Subdivision Map Act* (1974) 5 Pacific L.J. 55-56, citations omitted.

[2] See Stats. 1893, ch. 80; Stats. 1937, ch. 670, § 31, p. 1874; see now Gov. Code, §§ 66410-66499.38.

[3] Stats. 1937, ch. 670, §§ 1, 4, pp. 1863, 1865.

By regulating and controlling the development of subdivisions, the Map Act also serves to protect the public and individual transferees from fraud and exploitation.[4]

Generally, a subdivision may only be created by first obtaining local government approval of a subdivision map. When a proposed subdivision will create four or fewer parcels, only a "parcel map" is required.[5] However, when a proposed subdivision will create five or more parcels, a two-step mapping process is ordinarily required: the filing of both a "tentative map" and a "final map."[6] The difference in requirements reflects the fact that larger subdivisions give rise to various considerations that may not be associated with smaller subdivisions. These include the layout of lots, circulation, and access within the subdivision; the nature and extent of dedications and improvements; and the subdivision's relationship to adjoining lands.[7] For larger subdivisions, "[t]he tentative-map process gives the staff and the approving body (usually the planning commission) flexibility in suggesting acceptable changes to the subdivision before it is finally mapped."[8]

---

[4] Curtin & Merritt, California Subdivision Map Act and the Developmental Process (CEB 2d ed. 2018), § 1.6, pp. 1-9 – 1-10 (hereafter, Curtin & Merrit), citing (in addition to provisions of the Map Act) *Pratt v. Adams* (1964) 229 Cal.App.2d, 602, 606; *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549; *Bright v. Board of Supervisors* (1977) 66 Cal.App.3d 191, 194 (*Bright*); see also *South Central Coast Regional Com. v. Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 844-845 (Act's purposes are to "facilitate orderly community development by regulating and controlling the design and improvement of subdivisions and to protect the buying public from exploitation"); *Benny v. City of Alameda* (1980) 105 Cal.App.3d 1006, 1010 (Act establishes general "statewide criteria for land development planning, and delegates authority to cities and counties to regulate the details of subdivisions").

[5] Gov. Code, § 66428.

[6] Gov. Code, § 66426, subd. (a). A tentative map is "made for the purpose of showing the design and improvement of a proposed subdivision and the existing conditions in and around it and need not be based upon an accurate or detailed final survey of the property." (Gov. Code, § 66424.5, subd. (a).) By ordinance, a local agency may require a tentative parcel map even when a parcel is divided into four or fewer parcels. (Gov. Code, § 66428, subd. (a).)

[7] See Curtin & Merritt, *supra,* § 3.1, p. 3-2.

[8] Curtin & Merrit, *supra,* § 3.1, p. 3-2.

3

The two-step mapping process that applies to larger subdivisions can be more costly and time-consuming than the "parcel map" process that applies to smaller subdivisions.[9]  Accordingly, subdividers may use various approaches to avoid the more extensive mapping requirements.[10]  One such approach, referred to as "quartering," involves successive divisions of land into four or fewer parcels as a way of avoiding tentative- and final-map requirements.[11]

The opinion request describes a situation where a subdivider owns one parcel, subdivides it into four parcels using a parcel map, and sells all of the resulting subdivided parcels.  The subdivider subsequently acquires a contiguous parcel and seeks to divide that parcel into another four parcels.  The request asks whether the local government should consider the successive subdivisions of the parcels, never simultaneously owned by the subdivider, as one subdivision for purposes of applying the provisions of the Map Act – meaning it would treat the subdivision as creating a total of eight parcels, triggering the Map Act's two-step mapping process.

## ANALYSIS

As a general rule, the Map Act requires a tentative and final map "for all subdivisions creating five or more parcels."[12] The critical question here is whether the "subdivision[] creating five or more parcels" must happen in a single act or can occur

---

[9] Compare Gov. Code, §§ 66433–66443 (final maps) with §§ 66444–66450 (parcel maps); see *Bright, supra,* 66 Cal.App.3d at p. 195 (higher standards placed on mapping for larger subdivisions in comparison to divisions of four or fewer parcels); 61 Ops.Cal.Atty.Gen. 299, 300 (1978) ("Essentially, the [division of land into five or more parcels] involves stricter requirements and more extensive procedures for approval than [a division into four or fewer parcels]").

[10] See, e.g., *Fishback v. County of Ventura* (2005) 133 Cal.App.4th 896, 899-901; *Pratt v. Adams, supra,* 229 Cal.App.2d 602, 603-604; 55 Ops.Cal.Atty.Gen. 414, 417-420 (1972) (abuse of former "annual quartering" rule); 54 Ops.Cal.Atty.Gen. 213, 215-216 (1971) (abuse of "latest adopted county tax roll" description); see also 77 Ops.Cal.Atty.Gen. 185, 185 (1994) (subdivider may not designate as an exempt "remainder" a portion of land to be subdivided in later phase of development).

[11] See 54 Ops.Cal.Atty.Gen., *supra,* at pp. 215-216; Curtin & Merritt, *supra,* § 3.3, p. 3-4.

[12] Gov. Code, § 66426.

4

through serial acts of subdivision with an intervening sale of subdivided parcels, such that there is no contemporaneous ownership of the parcels to be subdivided.[13]

In construing the Map Act, our fundamental task is "to determine the Legislature's intent so as to effectuate the law's purpose."[14] In doing so, we are guided by standard principles of statutory construction. "The primary and controlling consideration in the construction of a statute is the determination of, and the giving effect to, the legislative intent behind the statute. Where the language of the statute is clear, it is not difficult to ascertain the legislative intent and to follow the plain meaning of the words used. The ordinary and usual import of the language is to be adopted and harmonized with other statutes relating to the same subject matter."[15] However, when the statutory language is unclear, "it is appropriate to consider the consequences that will flow from a particular interpretation."[16] Then, "our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results."[17]

We begin our analysis with the text of the Map Act and note that it defines "subdivision" as a verb: "the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease, or financing, whether immediate or future."[18] Consistent with this syntax, the Act mandates that "[a] tentative and final map shall be required for all subdivisions *creating* five or

---

[13] This opinion is limited to evaluating the relationship between the two successive subdivision applications for purposes of determining applicability of the Map Act; it does not evaluate other legal requirements.

[14] *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582, quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737; 77 Ops.Cal.Atty.Gen., *supra,* at p. 188.

[15] 61 Ops.Cal.Atty.Gen. *supra*, at p. 301, citations omitted; see also *Tower Lane Properties v. City of Los Angeles* (2014) 224 Cal.App.4th 262, 268 (construction of Map Act).

[16] *Witt Home Ranch, Inc. v. County of Sonoma* (2008) 165 Cal.App.4th 543, 555, citations and internal quotation marks omitted.

[17] *Id*. at pp. 555-556.

[18] Gov. Code, § 66424.

more parcels."[19]  This statutory language makes clear that the focus of the Act is on the *actions* of a subdivider, not the ownership of the subdivided parcels.

Thus, when evaluating successive subdivisions of contiguous parcels under different ownership, the critical inquiry is whether they are the work of the same subdivider, whether directly or indirectly.  In *Bright v. Board of Supervisors*, the question before the Court of Appeal was whether the subdivider, Bright, had created a "subdivision" comprising five or more parcels by a series of lot divisions occurring over time.[20]  Bright acquired parcel "A" as his separate property in 1966.  Two years later, he and his wife acquired a contiguous parcel "B," which they held in joint tenancy.  Three years thereafter, Bright conveyed his interest in a portion of parcel "B" to his wife as her separate property, thereby creating parcel "C."  Two years thereafter still, Bright proposed to divide parcel "A" into four additional parcels by a parcel map.[21]  County officials rejected the proposed quartering of parcel "A" on the ground that the four parcels must be aggregated with Bright's earlier creation of Parcel "B"-"C", resulting in five or more parcels.  The trial court rejected the county's determination on the ground that "there was no substantial evidence as to whether or not contiguous Parcels 'A' and 'B'-'C' were being developed together or whether or not they have common streets or other common planning."[22]  The Court of Appeal tersely overruled:  "[T]here is . . . no requirement there must be a common plan of development."[23]  This makes sense: The Act's concern is unregulated land development, whether the development occurs in a subdivider's single act of subdivision or from the subdivider's serial acts of subdivision.[24]

Unlike the scenario in *Bright*, the opinion request assumes that the subdivider will subdivide and sell the first set of parcels before acquiring ownership of the second contiguous parcel it seeks to subdivide.  But it is not relevant, in our view, that by the second subdivision application the owners of the contiguous lots are different, or that the

_____

[19] Gov. Code, § 66426, emphasis added.

[20] *Bright, supra,* 66 Cal.App.3d at p. 193.

[21] *Ibid*.

[22] *Id.* at p. 194, fn. 1.

[23] *Id.* at p. 194.

[24] Cf. 77 Ops.Cal.Atty.Gen., *supra*, at p. 185 (Gov. Code, § 66424.6 does not permit exclusion of parcels as a "remainder," for purposes of determining mapping requirements, when developer subdivides portions of more than one parcel for the first phase of a housing development, with intent later to subdivide the undeveloped parcels in subsequent phases of the development).

6

lots were never contemporaneously owned. The Act requires only that the lots comprising the subdivision be shown "as contiguous units" on the latest equalized county assessment roll.[25] On its face, the Act is concerned with regulating subdivision development, by "any subdivider . . . for the purpose of sale, lease or financing, whether immediate or future," not with who owns the parcels at the time of subdivision. Notably, since its original enactment, the Subdivision Map Act has never defined "subdivision" in terms of the *owner* of the parcel being divided, but rather in terms of a "subdivider" of parcels.[26] And the Legislature has always recognized that a subdivider may act on his or her behalf, "for himself *or for others*."[27] If contiguous units are subdivided, the statute includes no requirement that the parcels, at the time of subdivision, are or have been under common ownership.[28] We will not read such a requirement into the statute, especially since doing so could undermine the evident purposes of the Act.[29]

---

[25] Gov. Code, § 66424.

[26] See Stats. 1937, ch. 670, § 2(g), p. 1864; 55 Ops.Cal.Atty.Gen., *supra*, at p. 419 (phrase "by any subdivider" in definition of "subdivision" means definition "is framed in terms of action by one subdivider"). When it was added to the Government Code in 1974, section 66424 omitted the phrase "by any subdivider" from the definition of "subdivision." (See Stats. 1974, ch. 1536, § 4, p. 3467.) We noted the omission in an opinion (59 Ops.Cal.Atty.Gen. 493, 494-495 (1976)), and the phrase was quickly restored the following year as an urgency measure (Stats. 1977, ch. 234, § 3, p. 1034.) Even in the 1974 version, the Act defined a subdivider as one who divides real property into a subdivision. (See Stats. 1974, ch. 1536, § 4, p. 3466 (Gov. Code, § 66423).)

[27] Stats. 1937, ch. 670, § 2(h), p. 1865; see now Gov. Code, § 66423 (defining "subdivider").

[28] In *Bright,* the subdivider proposed to quarter parcel "A," which he owned separately; parcel "B," resulting from the "B"-"C" division, was owned by Bright and his wife in joint tenancy, whereas parcel "C" from that division had been conveyed to Bright's wife as her separate property. (See *Bright, supra,* 66 Cal.App.3d at p. 193.)

[29] See *Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1311, quoting *Realmuto v. Gagnard* (2003) 110 Cal.App.4th 193, 203 ("A court may not read into a statute qualifications or modifications that will materially affect its operation so as to conform to a supposed intention not expressed by the Legislature"); see also *Taylor v. McKay* (1975) 53 Cal.App.3d 644, 651 (same); 66 Ops.Cal.Atty.Gen. 40, 46 (1983); 63 Ops.Cal.Atty.Gen. 1, 4 (1980).

Our conclusion here is consistent with our opinion issued over 40 years ago.[30] There, we were presented with the circumstance of a subdivider who, owning several contiguous parcels previously created by a third party, proposed to subdivide one of those contiguous parcels. We were asked whether the other parcels, having been validly created by the third party, could be excluded for purposes of determining the mapping requirements. We concluded that they could be so excluded because they had, in fact, been subdivided by someone else, acting independently.[31] We were also asked, however, if our hypothetical subdivider should seek to successively subdivide several of the contiguous parcels, whether all of the parcels should be viewed collectively for purposes of the Map Act. We concluded that all the parcels would have to be aggregated, even if they had been sold and were under separate ownerships at the time of the subsequent subdivision application.[32] Key to our distinction was the fact that all of the excluded parcels in the first division had been created by a different subdivider, whereas all of the subsequent divisions would have been accomplished by the same subdivider as accomplished the first division.[33] We explained:

> [T]he successive division of contiguous parcels by the same subdivider must be considered together in determining the applicable standards to be applied under the Map Act. The fact that the contiguous parcels were created by a third party in compliance with the Map Act or other law applicable at that time or that a part of an earlier division had been transferred by sale or otherwise should not detract from the application of the Map Act standards to the division of land where the purpose of the Map Act is to secure the orderly development of land . . . , and in a significant respect is based upon the number of parcels created. Whether the parcels are created all at the same time or over a period of time does not detract from the application of the Map Act . . . , and the fact that some of the earlier parcels have been sold should not detract from the determination that a particular number of parcels have been created overall.[34]

---

[30] 61 Ops.Cal.Atty.Gen. 114 (1978).

[31] *Id.* at p. 116; cf. 55 Ops.Cal.Atty.Gen*., supra,* at pp. 417-418 (successive divisions of property by successive owners to evade mapping requirements).

[32] 61 Ops.Cal.Atty.Gen., *supra,* at p. 114 (questions 2 and 3).

[33] See 61 Ops.Cal.Atty.Gen., *supra,* at p. 116.

[34] 61 Ops.Cal.Atty.Gen., *supra,* at p. 117, citations omitted.

18-902

The reasoning of our prior opinion applies to the question presented here. The purposes of the Map Act in securing orderly community development[35] would be seriously undermined if a subdivider could avoid tentative and final mapping obligations by the successive acquisition, quartering, and sale of contiguous parcels. The effect would be to allow the creation of subdivisions, through phased quartering and disposition, without adequate consideration of subdivision standards and broader concerns for community development. That the subdivider sells off his quartered parcels before acquiring another for further division should not avoid the Legislature's concern for greater scrutiny of larger developments. We have previously expressed our view, supported by the courts, that the provisions of the Act are to be "liberally construed to require the highest possible standards for orderly community development"[36] in order "to prevent circumvention of its several goals and purposes."[37]

We conclude, then, that if a subdivider owns one parcel and subdivides that parcel pursuant to a parcel map, then, after selling off all of the resulting subdivided parcels, acquires a contiguous parcel and seeks to divide that parcel pursuant to a parcel map, the local agency should count the previously subdivided contiguous parcels as part of the second application for subdivision.

---

[35] *Kalway v. City of Berkeley* (2007) 151 Cal.App.4th 827, 833.

[36] 61 Ops.Cal.Atty.Gen., *supra,* at p. 301, citing *Bright, supra,* 66 Cal.App.3d at pp. 195-196 and *Pratt v. Adams, supra,* 229 Cal.App.2d at p. 606; see also *Kalway v. City of Berkeley, supra,* 151 Cal.App.4th at p. 833 ("ownership" as used in Map Act entitled to broad construction in light of "purpose and history of the act"); *John Taft Corp. v. Advisory Agency* (1984) 161 Cal.App.3d 749, 755 (liberal construction); *van't Rood v. County of Santa Clara, supra,* 113 Cal.App.4th at p. 564 ("'the Subdivision Map Act constitutes the major land use permit control vehicle for urban planning and environmental protection,'" citation omitted); 64 Ops.Cal.Atty.Gen. 762, 766 (1981) (provisions of Act to be broadly construed).

[37] 64 Ops.Cal.Atty.Gen., *supra,* at p. 766 (construing section 66424 to include court-ordered partitions), quoting *Freedland v. Greco* (1955) 45 Cal.2d 462, 468 ("That construction of a statute should be avoided which affords an opportunity to evade the act, and that construction is favored which would defeat subterfuges, expediencies, or evasions employed to continue the mischief sought to be remedied by the statute, or to defeat compliance with its terms, or any attempt to accomplish by indirection what the statute forbids"); 52 Ops.Cal.Atty.Gen. 79, 81 (1969) (evasion of the Act "cannot be accomplished by subterfuge").