[Civ. No. 38073. First Dist., Div. One. Nov. 3, 1976.]

ROBERT HIRSCH et al., Plaintiffs and Appellants, v.
CITY OF MOUNTAIN VIEW, Defendant and Respondent.

**COUNSEL**

Anthony A. Lagorio and Constance K. Heneke for Plaintiffs and Appellants.

Bruce W. Liedstrand, City Attorney, for Defendant and Respondent.

**OPINION**

**MOLINARI, P. J.**—This is an appeal from a summary judgment granted in favor of defendant City of Mountain View and against plaintiffs Robert Hirsch and Central Park Apartments and from the judgment entered in favor of defendant.

The complaint alleges that Hirsch is a general partner in the partnership known as Central Park Apartments; that he is the owner of real property commonly known as 90 Sierra Vista Avenue, Mountain View; that said property consists of six contiguous parcels; that in January of 1972 Hirsch filed a planned community application seeking permission to utilize the six parcels as a single parcel for the development of a senior citizens apartment house complex and submitted a proposed minor subdivision map as required by defendant city's planning commission; that defendant, as a condition of approval of the application and the minor subdivision map, required that plaintiffs pay a

park and recreation fee to defendant; that plaintiffs protested the imposition of the fee requirement and duly appealed the same to defendant's city council; that their appeal was denied; and that on October 5, 1972, plaintiffs paid $30,338.81 to defendant as a park and recreation fee. The complaint seeks a refund of this fee.

Defendant filed an answer which alleges that the fee in question was imposed under its authority as a charter city pursuant to its police power and its dealing with a municipal affair. Thereafter each of the parties filed a motion for summary judgment. The motion of plaintiffs was denied; that of defendant was granted; and judgment was entered in favor of defendant.

The facts as presented by the respective motions for summary judgment disclose that the parties are essentially in agreement as to the pertinent facts. The question whether triable issues are presented is therefore solely a question of law. (*Wilson* v. *Wilson,* 54 Cal.2d 264, 269 [5 Cal.Rptr. 317, 352 P.2d 725]; *Nelson* v. *United States Fire Ins. Co.,* 259 Cal.App.2d 248, 251 [66 Cal.Rptr. 115].)

The undisputed facts are as follows: In January of 1972 plaintiffs filed an application with defendant for a variance, and for approval of a site plan and architectural review to permit construction of a 149-unit apartment complex on real property commonly known as 90 Sierra Vista Avenue, Mountain View. At the time of the application, the property consisted of six separate parcels which had been created by the subdivision map of Ora Loma Acres, which was recorded in the Official Records of Santa Clara County on July 24, 1930. The zoning for the property in question at the time of the application was R3-2.2. The zoning ordinances of defendant city imposed certain yard requirements on developments in the R3-2.2 zone which required that construction be set back certain designated distances from the lot lines of each parcel and that there be front, side and rear yards for each parcel. The development proposed by plaintiffs did not comply with these requirements and in fact the proposed structures encroached directly upon the existing lot lines. The proposed project could not meet the property development standard for density of the R3-2.2 zone unless it were a single development on a single parcel (the size of the six parcels combined).

On April 11, 1972, the zoning administrator conditionally approved the project on the condition that a parcel map (referred to as a minor

subdivision map under the Mountain View Subdivision Ordinance) be filed. Plaintiffs filed a parcel map pursuant to said conditions. This map was approved by defendant's subdivision commission of the planning commission on April 27, 1972, on the condition that plaintiffs pay a park and recreation fee as required by section 28.21 of the Mountain View City Code. Plaintiffs appealed this condition to the city council. On June 12, 1972, the city council denied the appeal and upheld the condition requiring the payment of the park and recreation fee. On October 5, 1972, plaintiffs paid said fee in the sum of $30,338.81 to defendant and building permits for the construction of the apartment house complex were issued.

The issue presented is whether defendant city had the authority to assess the park and recreation fee in question. Plaintiffs contend that such fees may not be assessed for a land development in which land is not divided or subdivided and that prior to 1973 defendant was without authority to assess such fees for a development of land less than a subdivision.

■ We consider, first, whether defendant had the authority prior to 1973 to enact an ordinance which would allow the assessment of such fees. Prior to March 7, 1973, former section 11546 of the Business and Professions Code (now Gov. Code, § 66477) provided, in pertinent part, as follows: "The governing body of a city or county may by ordinance require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a final subdivision map . . . ." The word "subdivision" was then defined as a division of land into five or more parcels. (Former Bus. & Prof. Code, § 11535, subd. (a), now Gov. Code, §§ 66424 and 66426.) Effective March 7, 1973, former section 11546 of the Business and Professions Code was amended, so as to provide that "The governing body of a city or county may by ordinance require the dedication of land, the payment of fees in lieu thereof, or a combination of both, for park or recreational purposes as a condition to the approval of a final subdivision map *or parcel map for a division of land not defined as a subdivision,* . . ." (Italics added.)

In *Codding Enterprises* v. *City of Merced,* 42 Cal.App.3d 375 [116 Cal.Rptr. 730], the appellant was the owner of a five-acre parcel which was zoned for the construction of 107 apartment units. In October of 1972 the appellant sold the five-acre parcel to a third party, but before

■

the parcel could be conveyed city ordinances required the appellant to obtain permission from the City of Merced for a lot split. As a condition of approving the lot split, the city levied fees in the amount of $150 for each of the apartment units planned. These fees were collected in lieu of dedication of land for park and recreation purposes pursuant to an ordinance of the City of Merced. The appellant asserted that the ordinances allowing the assessment of the fees were void in that they conflicted with former section 11546 of the Business and Professions Code.

In *Codding* the ordinances providing for the assessment of the fees were enacted, as is the case here, prior to the amendment to former section 11546 of the Business and Professions Code which became effective on March 7, 1973. The reviewing court concluded that the amendment was adopted because the Legislature realized that it had inadvertently not authorized general law cities to regulate within its boundaries lot splits or any property division less than a subdivision. It held, however, that because the City of Merced is a charter city which derives its authority or power from the Constitution of the State of California (art. XI, § 5), rather than a general law city which derives its authority from the Legislature, the City of Merced had authority over municipal affairs so long as its ordinances do not conflict with the federal Constitution, the state Constitution, or the provisions of its own charter. (42 Cal.App.3d at p. 377.) The court, observing that "There would not seem to be much question but that regulation of land use, particularly in relation to multi-unit housing which results in population saturation, vehicular congestion and elimination of open space for park and recreation areas, is of vital concern to a municipality" (at p. 378), held that the levy of the fee was a municipal affair and that the Legislature had not preempted the authority of a charter city to control land development within its boundaries except as to subdivisions. (At p. 378.)

Defendant city is a charter city and therefore the rationale and holding of the *Codding* case is applicable here. Because the Legislature did not preempt the field of the control of land development defendant could, in 1972, impose a park or recreation fee as a condition for approval of a map creating less than five parcels.

Plaintiffs argue that we should follow *Santa Clara County Contractors etc. Assn. v. City of Santa Clara*, 232 Cal.App.2d 564 [43 Cal.Rptr. 86]. *Santa Clara* held that a charter city could not impose a recreation fee as

a condition for the approval of a subdivision map because the Subdivision Map Act (former Bus. & Prof. Code, § 11500 et seq.) had preempted the field and did not allow for the assessment of any such fee. (At pp. 571-579.) We think that *Santa Clara* and *Codding* are distinguishable. We first observe that *Santa Clara* was decided prior to the enactment of former section 11546 of the Business and Professions Code which *Codding* was called upon to interpret. Moreover, *Santa Clara* was clearly dealing with a subdivision of property; *Codding* with a property division less than a subdivision. *Codding* specifically states ". . . we do not find an intimation in section 11546 that the Legislature intended to preempt the authority of a charter city to control land development within its boundaries *except as to subdivisions.*" (42 Cal.App.3d at p. 378; italics added.)

Plaintiffs argue that even if defendant had the authority to enact an ordinance for the purpose of assessing park and recreation fees when less than five lots are created, it did not purport to do so in the ordinance that it did enact. They make reference to that portion of the ordinance that states its purpose,[1] and specifically allude to the statement that it is enacted pursuant to the authority granted by sections 11510 and 11546 of the Business and Professions Code. They argue that because, at the time the ordinance was adopted in 1971, section 11546 authorized cities to require the payment of fees for park or recreational purposes as a condition to the approval of a final subdivision map and because at that time a subdivision was defined as a division of five or more parcels, the ordinance is no broader than the authority granted to general law cities under the Subdivision Map Act prior to March 7, 1973.

Plaintiffs' argument overlooks the definition of the term "subdivision map" as contained in the ordinance. In subdivision (c) of section 28.20 it is stated that ". . . 'subdivision map' shall include a minor subdivision

---

[1]That portion of the ordinance provides as follows:

"ARTICLE II—PROVISION FOR PARK LAND DEDICATION
OR FEES IN-LIEU THEREOF

"SEC. 28.20. *Purpose.* The City Council declares:

"(a) This Article is enacted pursuant to the authority granted by Sections 11510 and 11546 of the Business and Professions Code of the State of California, as amended, and added by Chapter 1869, Statutes of 1965.

"(b) The park and recreational facilities for which dedication of land and/or payment of a fee is required by this Article are in accordance with the Parks and Recreation Section of the Public Facilities Element of the General Plan of the City of Mountain View adopted by the City of Mountain View on February 26, 1968.

"(c) As used in this Article, 'subdivision map' shall include a minor subdivision map and a parcel map."

map and a parcel map." It is apparently conceded by the parties that the terms "minor subdivision map" and "parcel map" have reference to the same map. At the time the subject ordinance was adopted the term "parcel map" was clearly defined by statute. Former section 11503.1 of the Business and Professions Code[2] provided as follows: " 'Parcel Map' refers to a map showing the division of land as described in subdivisions (b) and (c) of Section 11535."[3] Subdivision (b) of former section 11535 provided that "Subdivision does not include any parcel or parcels of land which is divided into four or less parcels. . . ." Subdivision (c) of former section 11535 provided that a subdivision does not include the division of any real property shown on the assessment roll as a unit or as contiguous units which is divided for the purpose of sale, lease or financing where any of certain enumerated conditions prevail.

In view of the applicable definition of the term "subdivision map" it is clear that defendant's authority under the ordinance was broader in scope than that granted general law cities under the Subdivision Map Act prior to March 7, 1973. We observe that in statutory construction a specific provision controls a general provision. (Civ. Code, § 3534; *Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 347 [79 P.2d 1080]; *Bank of Balboa* v. *Benneson,* 122 Cal.App. 121, 123-124 [9 P.2d 540].) In the ordinance under consideration the specific provision defines "subdivision map" as including a "parcel map" which would control the general introductory language of subdivision (a) of section 28.20.

Plaintiffs' final argument is that in the instant case the property had already been subdivided and the proceedings under consideration were to consolidate the parcels. Plaintiff is apparently arguing that since the map filed in the instant proceeding would decrease the number of lots rather than increase the number of lots, this is not a proper situation to assess a park and recreation fee. The thrust of their contention is that consolidation of land parcels should not be considered a land division.

Plaintiffs' argument must be considered in the light of the purpose they seek to accomplish by consolidating the six parcels. That purpose is the construction of a 149-unit apartment complex on the consolidated parcel. If the parcels were not consolidated the proposed project could not meet the zoning standards with respect to density. It is obvious that

---

[2]Repealed by Statutes of 1974, chapter 1536, operative March 1, 1975.

[3]The substance of these provisions is now contained in Government Code sections 66424 and 66426. (Added by Stats. 1974, ch. 1536, operative Mar. 1, 1975.)

an apartment complex of this size would have increased the population congestion of the area. This circumstance accentuates the need for urban open space. Accordingly, we perceive that the ordinance in question should not be read in a restrictive manner so as to preclude the assessment in the consolidation of parcels when the net result is to increase the population congestion in the area. (See *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 260 [104 Cal.Rptr. 761, 502 P.2d 1049].)

We observe, moreover, that because the property under consideration consisted of six separate parcels which had been created by the subdivision map duly recorded in 1930 it was necessary under the ordinance that plaintiffs file a parcel map in order to effect the consolidation of the parcels. Section 28.21 of the ordinance provides that "As a condition of approval of a final subdivision map the subdivider shall dedicate land, pay a fee in lieu thereof, or both, at the option of the city, for park or recreational purposes . . . ." As already indicated the term "subdivision map" under the ordinance includes within its meaning the term "parcel map." Accordingly, because defendant, in the exercise of its powers over municipal affairs as a charter city, could properly require plaintiffs to file a parcel map in order to consolidate the six parcels into one parcel for the purpose of constructing the apartment complex, defendant could assess a park and recreation fee as a condition for the approval of the parcel map. (See *Codding Enterprises* v. *City of Merced, supra,* 42 Cal.App.3d 375, 377-378, and see *Associated Home Builders etc., Inc.* v. *City of Walnut Creek,* 4 Cal.3d 633, 637-638 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].)

The foregoing discussion makes it unnecessary to consider defendant's contention that plaintiffs are estopped from raising the validity of the requirement that they file a parcel map because they have not exhausted their administrative remedies and because they accepted the benefits of the parcel map.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.