OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | : |
| | : No. 90-102 |
| of | : |
| | : OCTOBER 25, 1990 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| RODNEY O. LILYQUIST | : |
| Deputy Attorney General | : |
| | : |

THE HONORABLE JACK L. WHITE, ANAHEIM CITY PROSECUTOR, has requested an opinion on the following questions:

1. Would creation by condominium plan of a three-dimensional division of airspace which is then severed from any ownership interest in the underlying earth violate the provisions of Government Code section 66426 in the absence of a tentative and final map?

2. Would a condominium project consisting of five or more divisions of airspace within a previously created three-dimensional air cube constitute a subdivision under the terms of Government Code section 66426 for which a tentative and final map would be required even though such divisions of airspace are not coupled with any ownership interest in the earth underlying the airspace?

CONCLUSIONS

1. Creation by condominium plan of a three-dimensional division of airspace which is then severed from any ownership interest in the underlying earth would violate the provisions of Government Code section 66426 in the absence of a tentative and final map.

2. A condominium project consisting of five or more divisions of airspace within a previously created three-dimensional air cube would constitute a subdivision under the terms of Government Code section 66426 for which a tentative and final map would be required even though such divisions of airspace are not coupled with any ownership interest in the earth underlying the airspace.

ANALYSIS

The two questions presented for resolution concern the creation of a "dirtless" condominium project as may be authorized and regulated under two different statutory schemes: the Davis-Stirling Common Interest Development Act (Civ. Code, §§ 1350-1373; "Development Act") and the Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Map Act").

1.                                      90-102

A "dirtless" condominium project is one in which each owner receives title to his or her individual unit plus an undivided interest in the building in which his or her unit is located. The undivided interest in the building is usually equal for all unit owners or based upon the square footage of each unit relative to the square footage of all units. Ownership of the building does not include the earth beneath it. All of the "dirt" is conveyed to the homeowners' association established for the project concurrently with the conveyance of title to the purchaser of the first unit. Membership in the homeowners' association is incidental to unit ownership and cannot be separated from it.

The advantages of developing a condominium project that is "dirtless" primarily relate to the requirements imposed by the Department of Real Estate under the Subdivided Lands Law (Bus. & Prof. Code, §§ 11000-11200) and imposed by financial institutions with respect to construction loans for larger, phased projects. This form of real estate ownership provides flexibility in meeting these governmental and financial requirements when developing projects that may take years and numerous stages to complete.

We are informed that condominium project developers in Northern California have used this concept of real estate ownership in their developments over the past several years. Southern California developers, however, have not done so due to uncertainties in the treatment of this nontraditional form of real estate ownership[1] by two separate statutory schemes with their apparent differences in goals and requirements.[2]

1. Creation by Condominium Plan

The first question to be resolved is whether the creation of a three-dimensional division of airspace by filing a condominium plan would violate the provisions of Government Code section 66426 in the absence of a tentative and final map. We conclude that it would.

The question posed concerns the relationship between the provisions of the Development Act and the Map Act. A condominium plan is filed under the authority of the Development Act, while Government Code section 66426 is one of the provisions of the Map Act requiring the recording of a tentative and final map.

Civil Code section 1351, subdivision (e) defines a "condominium plan" as follows:

"'Condominium plan' means a plan consisting of (1) a description or survey map of a condominium project, which shall refer to or show monumentation on the ground, (2) a three-dimensional description of a condominium project, one or more dimensions of which may extend for an indefinite distance upwards or downwards, in sufficient detail to identify the common areas and each separate interest, . . ."

---

[1] In 65 Ops.Cal.Atty.Gen. 101, 103 (1982), we noted that in a condominium project, "the ownership of stacked cubes of space is a decided departure from the usual maxim of cujus est solum, ejus est usque ad coelum et ad inferos [to whomsoever the soil belongs, he owns also to the sky and to the depths]."

[2] The applicability of other statutory schemes, such as the Subdivided Lands Law, is beyond the scope of this opinion.

Government Code section 66426, on the other hand, provides:

> "A tentative and final map shall be required for all subdivisions creating five or more parcels, five or more condominiums as defined in Section 783 of the Civil Code, . . ."

"Section 783 of the Civil Code" defines a "condominium" as follows:

> "A condominium is an estate in real property described in subdivision (f) of Section 1351. A condominium may, with respect to the duration of its enjoyment, be either (1) an estate of inheritance or perpetual estate, (2) an estate for life, (3) an estate for years, such as a leasehold or a subleasehold, or (4) any combination of the foregoing."

Civil Code section 1351, subdivision (f) in turn provides:

> "A `condominium project' means a development consisting of condominiums. A condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit, the boundaries of which are described on a recorded final map, parcel map, or condominium plan in sufficient detail to locate all boundaries thereof. The area within these boundaries may be filled with air, earth, or water, or any combination thereof, and need not be physically attached to land except by easements for access and, if necessary, support. The description of the unit may refer to (1) boundaries described in the recorded final map, parcel map, or condominium plan, (2) physical boundaries, either in existence, or to be constructed, such as walls, floors, and ceilings of a structure or any portion thereof, (3) an entire structure containing one or more units, or (4) any combination thereof. The portion or portions of the real property held in undivided interest may be all of the real property, except for the separate interests, or may include a particular three-dimensional portion thereof, the boundaries of which are described on a recorded final map, parcel map, or condominium plan. The area within these boundaries may be filled with air, earth, or water, or any combination thereof, and need not be physically attached to land except by easements for access and, if necessary, support. An individual condominium within a condominium project may include, in addition, a separate interest in other portions of the real property." (Emphases added.)

The Development Act thus contemplates that the boundaries of the interests in a condominium project may be described on a condominium plan filed pursuant to its provisions. This would seemingly be as an alternative to describing the boundaries on a recorded final map or parcel map[3] as authorized by the Map Act. Does this mean that no subdivision map need be filed at all?

The Development Act contains various safeguards for condominium owners, including provisions for the enforcement of covenants and restrictions as equitable servitudes (Civ. Code, § 1354), ingress, egress, and support easements (Civil Code, § 1361), ownership of

---

[3]Ordinarily a parcel map would be required for subdivisions creating four or fewer condominiums, while a tentative and a final map would be required for the creation of five or more condominiums. (Gov. Code, §§ 66426, 66428.)

the common areas (Civ. Code, § 1362), and the creation of a community association (Civ. Code, § 1363).  It does not purport to affect or interfere with the requirements of the Map Act.  Indeed, Civil Code section 1352 states:

"This title applies and a common interest development is created whenever a separate interest coupled with an interest in the common area or membership in the association is, or has been, conveyed, provided, all of the following are recorded:

"(a) A declaration.

"(b) A condominium plan, if any exists.

"(c) A final map or parcel map, if [the Map Act] requires the recording of either a final map or parcel map for the common interest development."

In contrast to the purposes of the Development Act, the Map Act establishes general criteria for land development planning in communities throughout the state.  Cities and counties are given authority under this legislation to regulate the design and improvement of divisions of land in their areas through a process of approving subdivision maps required to be filed by each subdivider.  (Gov. Code, § 66411; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 869; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 506-508; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 844-845.)

The basic definition of "subdivision" for purposes of the Map Act is contained in Government Code section 66424, which states:

"`Subdivision' means the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease or financing, whether immediate or future except for leases of agricultural land for agricultural purposes.  Property shall be considered as contiguous units, even if it is separated by roads, streets, utility easement or railroad rights-or-way. `Subdivision' includes a condominium project, as defined in Section 1350 of the Civil Code, . . ." (Emphasis added.)[4]

---

[4]"Section 1350 of the Civil Code" formerly contained the Legislature's definition of a condominium project, but in 1985 the Legislature moved the definition to Civil Code section 1351. (Stats. 1985, ch. 874, §§ 13-14.)  We may deem the reference in Government Code section 66424 to the former statute as being to the present Civil Code provision.  (See *Puckett* v. *Johns-Manville Corp.* (1985) 169 Cal.App.3d 1006, 1009; *People* v. *Oliver* (1985) 168 Cal.App.3d 920, 926; *Valley Electric Co.* v. *Slagle* (1956) 142 Cal.App.2d 81, 83-84.)  Government Code section 9604 embodies this principle of statutory construction as follows:

"When the provisions of one statute are carried into another statute under circumstances in which they are required to be construed as restatements and continuations and not as new enactments, any reference made by any statute, charter or ordinance to such provisions shall, unless a contrary intent appears, be deemed a reference to the restatements and continuations."

Government Code section 66427 additionally provides:

"A map of a condominium project, a community apartment project, or of the conversion of five or more existing dwelling units to a stock cooperative project need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided, nor shall the governing body have the right to refuse approval of a parcel, tentative or final map of such a project on account of design or location of buildings on the property shown on the map not violative of local ordinances or on account of the manner in which airspace is to be divided in conveying the condominium. Fees and lot design requirements shall be computed and imposed with respect to such maps on the basis of parcels or lots of the surface of the land shown thereon as included in the project. Nothing herein shall be deemed to limit the power of the legislative body to regulate the design or location of buildings in such a project by or pursuant to local ordinances."

Although "[a] map of a condominium project . . . need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided" (Gov. Code, § 66427), the design and improvement of a condominium project are subject to the control of the city or county under provisions of the Map Act. (See *Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 262; *Soderling* v. *City of Santa Monica*, *supra*, 142 Cal.App.3d 501, 506-508; 65 Ops.Cal.Atty.Gen. 101, 102-103 (1982).) Government Code section 66411 states in part:

"Regulation and control of the design and improvement of subdivisions are vested in the legislative bodies of local agencies. Each local agency shall, by ordinance, regulate and control the initial design and improvement of common interest developments as defined in Section 1351 of the Civil Code . . . ." (Emphasis added.)

The Map Act and Development Act may be seen as consistent and in agreement with each other. They regulate different aspects of condominium developments, and in so doing, each refers to the other. "Statutes in pari materia should be construed together" (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 1379, 1387), "even when interpreting provisions in different codes" (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665). "[I]f possible, the codes are to be read together and blended into each other as though there was but a single statute [citations] . . . ." (*Lara* v. *Board of Supervisors* (1976) 59 Cal.App.3d 399, 408-409.) The boundaries of the ownership interests in a condominium project may properly be shown on a condominium plan rather than on a parcel or tentative and final map, but a subdivision map must necessarily be approved and recorded as directed by the Map Act.

Having established that the Development Act and Map Act operate together for purposes of creating a condominium project, we are left with the issue of whether a "dirtless" condominium project requires a different analysis or treatment. Under the two statutory schemes, a "condominium project" is "a development consisting of condominiums" each of which "is an estate in real property" comprised of (1) "an undivided interest in common in a portion of real property" and (2) "a separate interest in space called a unit." In addition, a condominium may include (3) "a separate interest in portions of the real property." (Civ. Code, §§ 783, 1351; Gov. Code, §§ 66424, 66426.)

In a dirtless condominium project, the requirement of "a separate interest in space called a unit" is clearly satisfied. Each unit owner is deeded a separate "space" as in any other condominium project. It is the requirement of "an undivided interest in common in a portion of real property" that may arguably distinguish a dirtless condominium project from other condominium projects under the two legislative acts. The owners have an undivided interest in common in their building, but the building has been severed in ownership interest from the underlying earth, and the latter has been conveyed to a homeowners' association. May a building separated in ownership interest from the underlying earth constitute "real property"?

To answer this question, we look to the Legislature's treatment and use of the term "real property." Civil Code section 658 states that "real property" includes "land," and "land" is defined in Civil Code section 659 as follows:

"Land is the material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance, and includes free or occupied space for an indefinite distance upwards as well as downwards, subject to limitations upon the use of airspace imposed, and rights in the use of airspace granted, by law."

The statutory definition of the term "land" was amended in 1963 (Stats. 1963, ch. 860, § 2) by deleting the word "solid" and adding the last phrase beginning with the words "and includes."[5] Significantly for our purposes, the 1963 amendment was part of the same legislation that defined the term "condominium" for the first time in a California statute. We thus believe that these definitions of "land" and "real property" contained in the Civil Code may be applied in the context of condominium projects as specifically contemplated by the Legislature in the Development Act and Map Act.

With such harmonizing of the statutes, we conclude that an undivided interest in common in a condominium building that has been severed in ownership interest from the underlying earth would constitute "land" and "real property" under the Legislature's definitions of these terms. Hence a dirtless condominium project may be treated the same as other condominium projects for purposes of the Development Act and Map Act.

In summary a three-dimensional division of airspace may in part be created by the filing of a condominium plan under the authorizing provisions of the Development Act. (See Civ. Code, § 1351.) This statutory scheme, however, does not take the place of or supersede the Map Act. Rather, it recognizes that subdivision maps must also be recorded if the Map Act so requires. (Civ. Code, § 1352.) The two statutory schemes have different requirements based upon their different goals and purposes. Although condominium project subdivision maps need not show the buildings or manner in which the buildings or airspace are to be divided (Gov. Code, § 66427), local governments are directed to regulate the initial design and improvement of condominium projects through their ordinances implementing the Map Act (Gov. Code, § 66411). The joint operation of the Development Act and Map Act are as applicable to dirtless condominium projects as to other condominium projects.

---

[5]Prior to 1963, Civil Code section 659 provided:

"Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance."

In answer to the first question, therefore, we conclude that creation by condominium plan of a three-dimensional division of airspace which is then severed from any ownership interest in the underlying earth would violate the provisions of Government Code section 66426 in the absence of a tentative and final map.

2. Map Act Enforcement

The second question deals with a three-dimensional air cube that has previously been created pursuant to the provisions of the Map Act. Would a condominium project consisting of five or more divisions of airspace within a previously created three-dimensional air cube constitute a subdivision under the terms of Government Code section 66426 for which a tentative and final map would be required even though such divisions of airspace are not coupled with any ownership interest in the earth underlying the airspace?

As explained in answer to the first question, Government Code section 66426 requires a tentative and final map "for all subdivisions creating . . . five or more condominiums as defined in Section 783 of the Civil Code." The latter Civil Code provision refers in turn to Civil Code section 1351, subdivision (f), declaring that "[a] condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit." An undivided interest in common in a building that has been severed in ownership interest from the underlying earth would constitute an interest in a "portion of real property" since it would constitute "land" as defined by the Legislature in Civil Code section 659.

While a tentative and final map would be required, the maps "need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided." (Gov. Code, § 66427.) The ordinances of the local government would require examination to determine the type of documents needed by the local government for it to review and approve the initial design and improvement of the condominium project. (Gov. Code, §§ 66411, 66434.2.)

The background material furnished with respect to the second question focuses upon projects built in phases, where separate buildings are constructed over a number of years. How are the Map Act requirements to be interpreted with respect to phased developments in which air cubes have previously been created in compliance with the Map Act?

First of all, we believe that it would be insufficient to file a subdivision map indicating only that it is for "condominium purposes" without any indication of the number of divisions that ultimately are to be created in the project. The Map Act contemplates that the actual number of divisions will be indicated so that the appropriate map (parcel or tentative and final map) will be prepared and recorded. (Gov. Code, §§ 66426, 66428.) The statutory requirements differ for these maps (Gov. Code, §§ 66425-66450), and the local government must be given an opportunity to perform its statutory duty to approve the entire project. It would be a violation of the Map Act to file a parcel map "for condominium purposes" and then attempt to create a condominium project of 20 units without appropriate government review and approval of all the divisions to be created.

Likewise it would violate the Map Act to file a tentative and final map for 20 units and then attempt to develop a project for 40 units. The local government cannot effectively control the design and improvement (Gov. Code, § 66411) of a 40-unit condominium project if it is presented with a map for a 20-unit project.

In a phased condominium project to be developed over a period of years, the ultimate number of units to be constructed may not be known at the initial planning stage. Circumstances may change, and the building of additional units may be considered. In order for the local government to regulate the initial design and improvement of the entire project, additional maps would be required to correspond with proposed additional divisions, even though the maps themselves "need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided." (Gov. Code, § 66427.) Even though a three-dimensional air cube is legally created, compliance with the Map Act will be necessary for any divisions within the air cube not previously approved.

To interpret in isolation the "need not" language of Government Code section 66427 would violate the principle that "statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) Moreover, major purposes of the Map Act are "to coordinate planning with the community pattern laid out by local authorities, and to assure proper improvements are made so the area does not become an undue burden on the taxpayer." (*Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1011.) The provisions of the Map Act are to be broadly interpreted so as to prevent circumvention of its goals and purposes. (*John Taft Corp.* v. *Advisory Agency* (1984) 161 Cal.App.3d 749, 755; *Bright* v. *Board of Supervisors* (1977) 66 Cal.App.3d 191, 195; *Hersch* v. *Mountain View* (1976) 64 Cal.App.3d 425, 432-433; *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602, 605-606.)[6] A construction of the Map Act's requirements, particularly those of Government Code sections 66411 and 66426, other than as we have concluded would thwart the purpose of orderly community development.

In answer to the second question, therefore, we conclude that a condominium project consisting of five or more divisions of airspace within a previously created three-dimensional air cube would constitute a subdivision under the terms of Government Code section 66426 for which a tentative and final map would be required even though such divisions of airspace are not coupled with any ownership interest in the earth underlying the airspace.

\* \* \* \* \*

---

[6]In *Freedland* v. *Greco* (1955) 45 Cal.2d 462, 468, the Supreme Court reaffirmed:

"'That construction of a statute should be avoided which affords an opportunity to evade the act, and that construction is favored which would defeat subterfuges, expediences, or evasions employed to continue the mischief sought to be remedied by the statute, or to defeat compliance with its terms, or any attempt to accomplish by indirection what the statute forbids.'"