STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Paul and ⎫
Caroline Alexander, Trustees ⎫
of the Paul and Caroline ⎫ Docket No. 194-10-99 Vtec
Alexander Trust ⎫
⎫

Decision and Order on Motions for Partial Summary Judgment

Appellants appealed from a decision of the Development Review Board (DRB) of the Town of Shrewsbury denying their subdivision application. Appellants are represented by Rodney E. McPhee, Esq.; the Town of Shrewsbury is represented by Mary C. Ashcroft, Esq.; George J. Lincoln IV and Rhea-Jean Lincoln have entered their appearance as interested persons and represent themselves, but have not participated in the briefing of the motion.

Appellants and the Town have filed cross-motions for partial summary judgment on Questions 3 and 4 of Appellants' Statement of Questions: Whether a subdivision permit was required when the 715 acres of property was divided and decreed by order of the Rutland Superior Court in March, 1985; and whether all owners of those 715 acres must join in the subdivision application or whether Appellants are entitled to seek approval for their four lots only.

The following facts are undisputed unless otherwise noted. On June 10, 1980 Boniface F. Korzun died, leaving three surviving children: Leonard Korzun, Wanda Wasilkowski (since deceased) and Caroline Korzun (now Alexander). Boniface Korzun and his wife Anna had acquired two large adjacent farms, in several transactions, all of which occurred prior to the adoption of zoning or subdivision regulations in Shrewsbury. They acquired the Smith farm in 1930, except for a 100-acre pasture and a tenement house, which were reserved by the Smiths. The pasture was transferred to them in 1938 and the tenement house in 1955 (recorded in 1956). They acquired the Knight Farm in 1943. Town Highways #21 (Lottery Road), #5 and #23 run through portions of the property and separate some sections of the property. The farmhouse located on the Smith Farm had been occupied by Boniface Korzun and the farmhouse for the Knight farm had been occupied by Leonard Korzun. Both farmhouses and their associated barns and outbuildings are located fronting on Town Road #21. The property is located in the Rural Residential zoning district.

In litigation brought by Leonard Korzun against the administrator of the Estate of Boniface F. Korzun (the Estate), by Judgment Order filed on March 6, 1985, the Rutland Superior Court decreed sections of the property to the three claimants. The Superior Court Order states that it shall be incorporated into any Probate decree of distribution issued by the Rutland Probate Court in the Estate of Boniface F. Korzun.

The references in the Judgment Order were to an attached unsurveyed diagram of the property on which eight sections were outlined. Section 1 and Section 3 are triangular parcels fronting on and

lying to the south of Town Road #21, separated at their adjacent corner by Town Road #23. Section 2 is a large parcel extending to the north of Town Road #21, across the road from Section 1. The former Knight farmhouse and buildings are located in approximately the center of the frontage of Section 2. Section 4 was divided (by the extension of the rear lot lines of Section 5 and Section 2) into a back lot without frontage, denominated as Section 4a, and a lot with frontage denominated as Section 4b.

Leonard Korzun was decreed the Boniface Korzun house and a surrounding acre of land, two adjacent parcels of land, and an option to purchase additional adjacent land. He was also decreed the Knight farmhouse (in which he had been living) and outbuildings, with two surrounding acres of land (" the Knight farmhouse parcel" ), to be divided from Section 2. At the time of the 1985 Superior Court Order, the 1971 Subdivision Regulations and the 1978 Zoning Regulations were in effect. At that time, the minimum lot size in the Rural Residential District was 2 acres, the minimum road frontage was 200 feet, and the minimum lot depth was 200 feet. The Knight farmhouse parcel as conveyed to Leonard Korzun was 2.01 acres in area, had a frontage of 538.39 feet, and a lot depth of 162 feet. At the time it was a conforming lot as to lot size and frontage, but was created as a nonconforming lot as to lot depth.

Caroline Alexander was decreed Section 1 and Section 3 (lying to the south of Town Highway #21, Section 2 except for the Knight farmhouse and its two acres which were to go to Leonard Korzun, and a portion of Section 4b sufficient to give her 36 acres of Section 4b. All of the sections decreed to Caroline Alexander were from what had been the Knight Farm.

Wanda Wasilkowski was decreed, either to herself or jointly with Caroline Alexander, the remaining property. Section 4a was transferred by them[1] to the United States of America in October of 1988.

On November 3, 1987, after the surveys had been performed, the Probate Court issued a partial decree of distribution decreeing the property from the estate as per the Superior Court order. This decree was not recorded in the land records until approximately one year later, according to the chart supplied by Appellants as Exhibit 17.

The Town adopted new Subdivision and Zoning Regulations effective April 5, 1988. Under the new regulations, the minimum lot size in the Rural Residential District was increased to 4 acres, the minimum road frontage was increased to 300 feet, and the minimum lot depth was increased to 300 feet. The Knight farmhouse parcel does not meet the minimum lot size or minimum lot depth requirements of the 1988 regulations. In addition, a Special Features Overlay Zone was created. Proposed uses in the Special Features Overlay Zone must undergo conditional use review to assure protection of resources located in that zone. The decision on appeal in the present case asserts that portions of the original Estate property lie in the Special Features Overlay Zone, but does not indicate which portions or whether any portion of Appellants' property falls within the overlay zone.

The administrator of the Estate deeded the parcels as described[2] in the Superior Court Order on July 15, 1988; the deeds were recorded on July 18, 1988.

In December of 1994, Caroline Alexander transferred her property to herself and her husband as trustees of the Paul and Caroline Alexander Trust.

On August 29, 1997, the Zoning Administrator issued a Notice of Violation to all three holders of land from the Estate, notifying them that they were in violation of the 1988 Subdivision Regulations because no subdivision permit had been obtained, parcels were under contract of sale, and parcels were sold without a subdivision permit. In February of 1998, Appellants applied for a subdivision permit for the entire Estate, seeking its division into those parcels as ordered by the Superior Court, decreed by the Probate Court and deeded by the Estate's administrator. That application was returned as incomplete, as it lacked the signatures of the other beneficiaries of the Estate.

On April 28, 1999, Appellants applied for a subdivision permit of only their 263.85 acres of land into the four parcels as ordered by the Superior Court, decreed by the Probate Court and deeded by the Estate's administrator. This application was denied because it was not an application for subdivision of the entire Estate property; Appellants have brought this appeal. The decision of the DRB states that four members voted to deny the application and no members voted to grant it. A DRB must consist of at least five and no more than nine members, 24 V.S.A. § 4461(a), but we have no indication of the composition of the Shrewsbury DRB. Only two of the four members who voted signed the decision.

No enforcement action has been filed[3] by the Town with regard to this property.

As of the date of adoption of the 1971 Subdivision Regulations, and the adoption of the 1978 Zoning Regulations, Boniface Korzun held the property in three parcels: the Smith farm (except for the reserved 100-acre pasture) conveyed in 1930; the reserved 100-acre pasture conveyed in 1938; and the Knight farm conveyed in 1943. The tenement house on its 200' x 210' x 200' x 240' lot, which had been reserved in the original Smith farm conveyance, remained a separate lot when it came into common ownership in 1955, but may have merged with its surrounding lot under § 423 of the 1978 Zoning Regulations. There was no other merger of the three Boniface Korzun parcels, as they were all large parcels conforming with the then-regulations.

The Town argues that the question of whether a subdivision permit was required should be analyzed under the April 1988 regulations, as the actual deeds transferring the property were not issued until July of 1988. However, under the definition of subdivision in both the 1971 and the 1988 subdivision regulations, a subdivision permit is required for the act of dividing the property, well in advance of the sale of any of the lots. If the requirement for a subdivision permit were not triggered until the sale of the lots, the municipality would be deprived of the opportunity to review the overall subdivision plan until after some of the land had passed out of the control of the subdivider. Accordingly, the act of dividing the property occurred either as of the 1985 Superior Court Order or the 1987 Probate Court Decree. In either case, the 1971 Subdivision Regulations and the 1978 Zoning Regulations are the applicable regulations.

Under the definition of subdivider and subdivision in the 1971 Subdivision Regulations, a subdivision permit was required for the division of a parcel of land into five or more lots by a subdivider for the purpose of sale or building development. No building development occurred in

the present case. Subdivider is defined to include any " person, firm, partnership, association, corporation, estate, trust or any other group or combination acting as a unit."

Most importantly, in the present instance, the three parcels held by the Estate were not divided for the purpose of sale. They were divided for the purpose of partition of lands in the settlement of an estate. The division of the Estate property among the three heirs was therefore not a subdivision and did not require a subdivision permit. Any further subdivision or building development by any of the three heirs, of course, would be subject to the normal zoning and subdivision rules in effect at the time of such further subdivision or development. And see, interpreting similar definition of ' subdivision' , In re Estate of Sayewich, 120 N.H. 237, 413 A.2d 581 (1980). The Knight farmhouse lot[4], which had been divided from Section 2 by the court orders, remains an existing lawful lot, non-conforming as to lot area and lot depth.

Second, in the present instance, the three parcels held by the Estate were not divided by a subdivider. The definition of subdivider in the Shrewsbury regulations does not include any governmental entities, and certainly does not include any which are not the owner of the property to be divided. The definition does not include any action of a court, even though Vermont has no explicit statutory exemption from the subdivision regulations for court judgments and decrees[5]. The division of the Estate property among the three heirs was therefore not a subdivision and did not require a subdivision permit.

Further, it is possible that none of the three parcels in the Estate property was divided into five or more lots. Material facts are in dispute as to this issue, because the parties have not indicated the location of the 100-acre pasture parcel originally excepted from the Smith farm. In any event, the original Court division of the Estate property does not meet the definition of subdivision for the first two reasons discussed above, and we need not reach this last argument.

Appellants also argue that the statute of limitations created by 24 V.S.A. § 4496 ' grandfathers' the subdivision of the Estate property. Section 4496(a) applies only to " an action, injunction, or other enforcement proceeding" regarding a municipal land use permit, whether the enforcement proceeding alleges a failure to obtain a required permit or whether it alleges a failure to comply with an issued land use permit. No enforcement proceeding has been brought, therefore it would be an entirely advisory opinion to address whether this statute of limitations is applicable, or from which date it should be measured.

As the original division of the Estate property did not require a subdivision permit, the DRB should have gone on to address Appellants' application for a permit for their four parcels, without regard to the participation by the other heirs of the Estate. We need not remand this question to the DRB, however, because the DRB had that application before it and could have acted on it. Rather, we can proceed to act on that application de novo.

After the distribution of the Estate property to the heirs, Carolyn Alexander held the following property, which is the subject of the subdivision application at issue in the present case. Continuing to use the ' section' designations from the Superior Court order, she owned Section 1: an undeveloped triangular lot of 26.06 acres to the south of Town Highway #21; Section 3: an undeveloped triangular lot of 13.14 acres also to the south of Town Highway #21, and separated

from Section 1 by Town Highway #23. She also owned approximately 224.65 acres of undeveloped land comprising Section 2 (minus the 2.01-acre Leonard Korzun lot) and a portion of Section 4b. Because these lots are adjacent and were conveyed in a single deed, a subdivision permit may be required for any further division of the land lying northerly of Town Highway #21.

The Town concedes that as of the May 1999 application at issue in the present case, the Development Review Board has been applying what it characterizes as the subdivision-by-road rule, so that subdivision permits would not be required for the sale of Section 1 or Section 3 separately. Accordingly, with reference to the application before the Court, Appellants' Motion for Partial Summary Judgment is GRANTED. No subdivision permit is required for the separate conveyance of Section 1 or Section 3.

Appellants provided the subdivision application at issue before the Court as a document within Exhibit 19, but did not provide within that Exhibit the survey which had been attached to the application. It remains unclear to the Court, now that the partial summary judgment questions have been answered in this Decision and Order, whether Appellants seek any further division of their land lying to the north of Town Highway #21. If they do, that application will be considered under the subdivision and zoning regulations in effect as of May of 1999, including any application of the overlay zone to that parcel. Because it is unclear what remains for this Court's consideration of this application, we will hold a telephone conference with the parties to discuss the appropriate next step.

Accordingly, based on the foregoing, Appellants' Motion for Partial Summary Judgment is GRANTED and the Town's Motion for Partial Summary Judgment is DENIED, as follows. No subdivision approval was required for the Rutland Superior Court's division of property to the three parties to whom it was decreed in March of 1985 or the Rutland Probate Court's decree of distribution issued in November of 1987. No subdivision approval was required for the transfer of that property as decreed from the estate to those parties in 1988. Appellants are entitled to apply for any further subdivision of their portion of the former Estate property without regard to the owners of the other portions of the Estate property. Parcel 1 and Parcel 3 are already separate lots and may be transferred independently of the rest of Appellants' land without a subdivision permit.

We will hold a telephone conference at 9 a.m. on Friday, March 16, 2001, to discuss the remaining aspects of this proceeding. Judge Wright expects to be holding a hearing at the Addison Superior Court on that date, and will place the call. Mr. and Mrs. Lincoln should call the Environmental Court as soon as possible at 802-479-4486, to advise whether they wish to participate in this conference at to give us a telephone number at which they may be reached.

Done at Barre, Vermont, this 1st day of March, 2001.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1.    The Town does not appear to claim that this transfer required a subdivision permit.

2.    Certain corrective deeds were made necessary by the initial deeds' confusion as to which parcels were to go to Wanda Wasilowski and caroline Alexander jointly, and which were solely to one or the other.

3.    The Town initially attempted to file an enforcement action as a so-called cross-appeal to the present appeal. The Court explained, in an entry order issued on November 19, 1999, that an enforcement action must instead be filed by a complaint. The Town has not filed an enforcement action to date.

4.    If it requires any additional land for an adequate septic system or for any other purpose, it may be necessary for the owner to petition the Superior Court or the Probate Court to reopen the original division orders, either to take additional evidence of the adequacy of land for septic disposal, or to consider that the lot depth was non-conforming when the lot was created. We note that the original Superior Court judgment order provided in §3(c) that if the two-acre parcel did not include the water supply for the house, that Leonard Korzun should be decreed water rights to use the then-present source. It is possible that a septic easement would have been considered by the Superior Court in the 1985 order if the matter had been raised at the time.

5.    Even in states with explicit exemptions for court judgments and decrees, a judgment fraudulently obtained for the purpose of circumventing the subdivision regulations may be set aside. See, e.g., Pratt v. Adams, 229 Cal.App.2d 602, 40 Cal.Rptr. 505 (1964); Mt. Laurel Twp. v. Barbieri, 151 N.J. Super. 27, 376 A.2d 541 (1977).