Filed 7/7/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SUSANNA P. STARCEVIC et al., | D076320 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2013-00076632-CU-OR-CTL) |
| PENTECH FINANCIAL SERVICES, INC., | |
| Defendant and Appellant; | |
| EDWARD P. ROSKI, JR., as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge. Affirmed.

Rossi Domingue and John F. Domingue for Defendant and Appellant.

M. Richardson Lynn, Jr. for Plaintiffs and Respondents.

The Reimann Law Group and David W. Reimann for Defendant and Respondent.

## INTRODUCTION

The issue on this appeal is straightforward: In a partition action, does a judgment creditor who was deemed the priority lien holder lose that status if it does not renew its judgment? For reasons we will explain, we conclude that it does.

Appellant Pentech Financial Services, Inc. (Pentech) and Respondent Edward P. Roski, Jr., Trustee of the Roski Community Property Trust Dated November 1, 1987 (Roski), are two of several lien holder defendants in the underlying partition action involving four properties. Pentech obtained the judgment underlying its lien on March 5, 2008. At the first phase of a bifurcated trial in November 2015, the trial court adopted the parties' stipulation to determine lien priority by the date of recording the judgment lien with the San Diego County Recorder's Office (Recorder's Office). In accordance with that stipulation, the trial court determined that Pentech was the priority lien holder.

In March 2017, the trial court adopted the parties' stipulated interlocutory judgment, wherein the parties stipulated that "satisfaction of any judgment or tax lien shall be prioritized by date of recording of such lien with the [Recorder's Office]." Pentech's judgment expired in March 2018, by operation of law, when it failed to renew the judgment within the prescribed 10-year period. By then, only one of the four subject properties had been sold. At the second phase of the bifurcated trial in January 2019, the trial court determined that Pentech lost its priority status because it no longer had a valid, enforceable judgment. The court subsequently awarded Roski, as the new priority lien holder, its proportional share of the funds—a sum of $505,957.45—from the sales of all four properties.

2

Pentech admits that it did not renew its judgment. Nonetheless, Pentech contends on appeal that the trial court's initial determination of priority lien status was final and non-reviewable. In the alternative, Pentech seeks modification of the judgment to entitle Pentech to receive a portion of the sale of the one property that sold before its judgment expired. Finally, Pentech argues the judgment should be reversed and remanded so that the trial court could consider arguments asserted by Pentech for the first time in its objections to a proposed statement of decision. Because these contentions lack merit, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Judgment Liens*

On March 5, 2008, Pentech obtained a judgment against Lucille Tran in the amount of $1,321,653.58. Pentech recorded the abstract of judgment with the Recorder's Office on April 4, 2008. Pursuant to Code of Civil Procedure section 683.020,[1] the 10-year period of enforceability of Pentech's judgment expired on March 5, 2018. Pentech did not renew the judgment.

In May 2009, Roski also obtained a judgment against Tran in the amount of $1,200,000. Roski recorded the abstract of judgment with the Recorder's Office in August 2009. Pursuant to section 683.020, the 10-year period of enforceability of Roski's judgment expired on May 28, 2019. Roski timely renewed both the judgment and the judgment lien.

---

[1] Unless indicated otherwise, all further unspecified statutory references are to the Code of Civil Procedure. Section 683.020, subdivision (a), provides that "upon the expiration of 10 years after the date of entry of a money judgment . . . [t]he judgment may not be enforced."

## II.

### *The Partition Action*

A.    *The Complaint*

In November 2013, a partition action was filed by tenants in common and one-fifth co-owners of four parcels of real property located in San Diego County.  Tran was a named plaintiff in the partition action.  The defendants, to include Pentech and Roski, were holders of judicial liens and/or abstracts of judgment against the subject real properties.  We refer to the four parcels subject to partition as:  (1) the C Street parcel; (2) the Broadway parcel; (3) the B Street parcel; and (4) the Mount Miguel parcel.

B.    *The Bifurcated Trial*

In November 2015, the trial court held the first phase of a bifurcated trial, "taking up [that day] only the issue of priority[,] saving for a later day the issue of the specific amounts of judgements in issue."  The parties stipulated to prioritize the claims based on the date the liens were recorded with the Recorder's Office.  The parties also stipulated that the actual amounts to be disbursed from the property sales would be determined by the court "at a future date."  The court adopted the stipulation as an order and based on the dates of the recorded liens, it ruled that Pentech had priority lien status amongst all the creditors.

C.    *Release of Liens*

In December 2015, the trial court issued an order approving the sale of the C Street parcel.  Although this proposed sale ultimately did not close, the order directed the "defendant judgment lien/tax lien creditors [to] forthwith deposit . . . irrevocable and unconditional judgment lien releases in recordable form with respect to the subject property."  To comply with that order, Pentech executed an unconditional release of its lien on the C Street

4

parcel and delivered it to escrow in January 2016. Pentech later executed unconditional lien releases for each of the subject properties pursuant to further court orders.

D.    *Stipulated Interlocutory Judgment*

As of March 2017, none of the subject properties had sold. On March 10, 2017, the trial court adopted the parties' stipulated interlocutory judgment. As to those defendants with judgments liens or tax liens against Tran, the parties stipulated that "satisfaction of any judgment or tax lien shall be prioritized by date of recording of such lien with the [Recorder's Office]." As for disbursement of funds from the sales of the subject real properties, the parties stipulated that the actual amount to be distributed "shall be determined by the court at a future date with prior notice to all parties." The parties also agreed to have Tran's share of the sales proceeds "placed in escrow and shall only be released upon order or final judgment of this court." Although an interlocutory judgment in a partition action is appealable (§ 904.1, subd. (a)(9)), no appeal was taken from this interlocutory judgment.

E.    *Sales of the Four Parcels of Real Property*

In October 2017, the B Street parcel sold for $345,000. Between July 2018 and September 2019, the remaining parcels sold: The C Street parcel sold for $2.1 million. The Broadway parcel sold for $340,000. The Mount Miguel parcel sold, pursuant to the trial court's final judgment, for a cash payment of $2,000. Tran's 20 percent share of the sale proceeds from these four properties totaled $505,957.45.

In each of the court orders approving the sales of the subject properties, the judgment lien creditors were informed that they would not receive money from the sale proceeds at the close of escrow. Instead, the sale proceeds were

5

to be placed in a separate account, and distributions would occur upon further order of the court.

F.   *Second Phase of Bifurcated Trial*

The second phase of the bifurcated trial was conducted by declarations in November 2018.  In its trial brief, Roski argued that, notwithstanding the trial court's November 2015 priority lien determination, the March 2017 stipulated interlocutory judgment expressed the parties' intent to have the court determine lien priority status after all the partition properties were sold.  With that date on hand, Roski argued Pentech was no longer entitled to any sale proceeds because its judgment had expired.  Amongst the creditors with valid, enforceable judgment liens, Roski claimed to have priority lien status because his judgment lien was the first recorded, entitling it to priority distribution of Tran's portion of the sale proceeds.

Pentech countered in its trial brief that the trial court already ruled on the priority of the creditors during the November 2015 bifurcated trial, that this determination was final, that renewal of the judgment was unnecessary in light of this determination, and that it should not be penalized for the delays accompanying the sales of the subject properties.

On January 4, 2019, the trial court issued a tentative ruling finding that Pentech lost its priority status by failing to renew its judgment.  It held that, pursuant to the stipulated interlocutory judgment, the parties agreed satisfaction of any judgment or tax lien would be prioritized by date of recording with the Recorder's Office.  Since this applied only to a "valid judgment lien," and since Pentech's judgment lien was no longer valid, the court deemed Roski the priority lien holder.  The court then directed Roski to submit a written statement of decision.

6

Pentech attempted to object to the trial court's tentative ruling. The court declined to hear argument but informed Pentech that it could file an "opposition" to Roski's proposed statement of decision.[2]

After Roski submitted a proposed statement of decision, Pentech filed objections. Pentech again argued the trial court's priority determination at the first phase of the bifurcated trial was final and that, even if the court relied on the stipulated interlocutory judgment, the priority lien status should be determined as of the date that it was entered (March 2017) instead of the date of judgment after trial. Pentech also asserted several new arguments as to why it should be deemed the priority lien holder, including constructive lien, equitable lien, post-judgment contracts, novation, accord and satisfaction, and promissory estoppel. The remainder of Pentech's objections were directed to Roski's proposed statement of decision. Pentech also filed its own statement of decision that affirmed its priority lien status and awarded Tran's share of the sale proceeds to itself.

At a hearing to consider Roski's proposed statement of decision and Pentech's objections, the trial court declined to consider Pentech's arguments contesting the ruling itself, finding them "not appropriate." The court also rejected Pentech's proposed statement of decision. Focusing on Pentech's objections to Roski's proposed statement of decision, the court agreed with some of those objections, and directed that Roski file a new statement of decision.

A final statement of decision was filed on August 9, 2019. Relevant for our purposes, the trial court framed the controverted issue before it as

---

[2] Although the court directed Pentech to file an "opposition," it clarified at a subsequent hearing that it was inviting only "objections" to the proposed statement of decision.

7

"whether a party who was already determined to have priority given its status as a judgment creditor loses such priority if its judgment is not renewed." Finding that Pentech failed to explain why it could not have renewed its judgment before expiration, the trial court adopted the parties' stipulation to have the liens prioritized by date of recording, but concluded that such prioritization applies "only to a valid judgment lien."

On September 5, 2019, the trial court issued its "Judgment Following Court Trial," adjudging Roski the priority lien holder and ordering the release of Tran's portion of the sale proceeds to Roski's counsel.

G.    *Pentech's Notices of Appeal*

On August 5, 2019, Pentech filed a notice of appeal relating to the trial court's refusal to consider its equitable arguments in objections to Roski's proposed statement of decision. On August 29, Pentech filed an amended notice of appeal which sought to add the statement of decision to the appeal. On November 18, Pentech filed a second amended notice of appeal, which now limits the scope of its appeal to the September 5, 2019 judgment following court trial.

## DISCUSSION

On appeal, Pentech contends: (1) the statutory time limits on a judgment's period of enforceability do not invalidate its own expired judgment because the trial court's November 2015 ruling was "a final determination of validity and priority of liens"; (2) at a minimum, the judgment should be modified to entitle Pentech to payment of the sale proceeds of the B Street parcel because it closed prior to the expiration of Pentech's judgment lien; and (3) the judgment should be reversed and the

8

matter remanded so the trial court could address those arguments that Pentech first raised in objections to the proposed statement of decision.

I.

*The Priority Lien Determination*

Pentech argues the trial court erred when it reconsidered its November 2015 priority lien determination. It contends that the stipulated interlocutory judgment was based on the November 2015 priority lien determination, that this determination encompassed the issue of the judgment lien's underlying validity, and that the determination as to both priority and validity was final and non-reviewable. We disagree with each of these contentions.

A.    *Governing Legal Principles*

The trial court's ruling is presumed to be correct on appeal, and the burden is on the appellant to affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Ambiguities are resolved in favor of affirmance. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) Because Pentech's appeal raises questions concerning the applicability of certain statutes to the enforceability of its judgment, we review the trial court's ruling de novo. (*McMillin–BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 553 [" 'It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal.' "].)

We begin our analysis with a brief overview of the two statutory schemes at issue in this case: The Enforcement of Judgments Law (§ 680.010 et seq.) and the partition action statutory scheme (§ 872.010 et seq.).

9

1.      *The Enforcement of Judgments Law*

The Enforcement of Judgments Law prescribes, as its name suggests, rules governing the enforcement of judgments.  In the case of a money judgment, a judgment creditor has a 10-year period to enforce its judgment. (§ 683.020.)  This period can be extended by 10 years if an application for renewal is submitted before the original term expires.  (§ 683.130, subd. (a).)  But once a judgment expires, it may not be enforced.  (§ 683.020, subd. (a).)  Upon the judgment's expiration, all enforcement procedures "shall cease," and any lien pursuant to the judgment "is extinguished."  (*Id.*, subds. (b), (c).)

A judgment lien on real property is effective only during the period of enforceability of the judgment.  (§ 697.030; Cal. Law Revision Com. coms., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 697.310, p. 301 [1982 Addition] ["[L]ien does not continue after the expiration of the period of enforceability of the judgment"].)  Like the judgment, the judgment lien can also be extended by 10 years if renewed.  (§ 683.180, subd. (a); § 697.310, subd. (b).)  Once renewed, "[t]he priority of the judgment lien on an interest in real property remains the same[.]"  (§ 683.110; Cal. Law Revision Com. coms., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 683.180, p. 175 [1982 Addition].)

2.      *Partition Actions*

Partition actions are governed by section 872.010 et seq., which sets forth the process by which a court determines the parties' interest in a property and the manner of partition.  Pursuant to section 872.720, subdivision (a), "[i]f the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, the manner of partition."

10

An interlocutory judgment in a partition action is appealable.  (§§ 904.1, subd. (a)(9), 872.720, subd. (a).)  Upon the conclusion of the time for appeal, the interlocutory judgment becomes final and conclusive despite its designation as "interlocutory."  (7 Witkin, Cal. Procedure (5th ed. 2020) Judgment, § 21, p. 564; *Raisin Inv. Co. v. Magginetti* (1952) 109 Cal.App.2d 163, 164 (*Raisin*).)  "An interlocutory decree in an action for the partition of real property, although preliminary to the final judgment of conformation, is conclusive as to the matters determined therein."  (*Pista v. Resetar* (1928) 205 Cal. 197, 199 (*Pista*); see also *Holt v. Holt* (1901) 131 Cal. 610, 611–612 ["interlocutory decree of partition . . . is a final judgment, certainly, as to all questions determined in it"].)  As a final judgment on the matters determined therein, the court does not have the power to amend an interlocutory judgment after it becomes final, even in cases of error.  (*Raisin, supra*, 109 Cal.App.2d at p. 164.)

B.    *Pentech Admittedly Failed to Comply with the Enforcement of Judgments Law*

Pentech obtained a judgment against Tran on March 5, 2008, and recorded the abstract of judgment with the Recorder's Office on April 4, 2008. The judgment's period of enforceability expired on March 5, 2018, and Pentech did not renew the judgment beforehand.

Pentech does not dispute that its judgment or the abstract of judgment recorded thereon expired before final judgment was entered in this case. Rather, Pentech contends the trial court's compliance with the provisions governing partition actions rendered it unnecessary for Pentech to renew its judgment because its interest in the subject properties had been conclusively determined.  Indispensable to this argument is the contention that the stipulated interlocutory judgment, which did not itself determine lien priority

11

or the parties' interests in the subject properties, encompassed the November 2015 priority lien determination.

The parties devote a significant portion of their respective briefs on appeal arguing when the lien priority should have been determined. Pentech contends that the parties intended for the stipulated interlocutory judgment to incorporate the November 2015 priority lien determination and that the trial court erred by later revisiting that determination. Roski contends that the stipulated interlocutory judgment anticipated a future determination of lien priority and, as such, the trial court did not err when it determined that Pentech lost its priority status. We will assume, for purposes of this appeal, that the trial court's November 2015 priority lien determination was incorporated into the stipulated interlocutory judgment and was a final determination of priority lien status, as Pentech contends.

We now proceed to the substantive question before us: Does the partition action statutory scheme excuse Pentech's non-compliance with the Enforcement of Judgments Law?

At the outset, we note there is a superficial appeal to Pentech's argument that the trial court's November 2015 priority lien determination was final and non-reviewable. An interlocutory judgment in a partition action "is conclusive as to the matters determined therein." (*Pista*, *supra*, 205 Cal. at p. 199.) Since the stipulated interlocutory judgment addressed the priority lien status of Tran's judgment creditors, this determination was arguably conclusive as to those matters, and the trial court was barred from revisiting it. (*Ibid.*; *Raisin*, *supra*, 109 Cal.App.2d at pp. 164–165.)

In truth, however, the trial court did not revisit the priority lien determination so much as recognize that, by operation of law, Pentech's judgment lien had expired and was thus no longer valid. This brings us to

12

the heart of the matter. The *connection* between the partition action statutory scheme and the Enforcement of Judgments Law is found in section 872.040, which provides that "[n]othing in this title excuses compliance with any applicable laws, regulations, or ordinances governing the division, sale, or transfer of property." Notwithstanding this provision, Pentech argues that it was not required to renew its judgment because the November 2015 priority lien determination was a final determination as to both priority *and* validity of the judgment lien. Pentech fails to cite to any legal authority to support this proposition, and we find it unpersuasive.

C.   *The Partition Action Statutory Scheme Does Not Excuse Pentech's Non-compliance with the Enforcement of Judgments Law*

We now turn to construction of section 872.040. Our goal in interpreting statutes is " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 (*Klein*).) The " 'key to statutory interpretation is applying the rules of statutory construction in their proper sequence . . . as follows: "we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." ' " (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1396.)

In the initial step, we examine "the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.' " (*Klein*, *supra*, 50 Cal.4th at p. 77.) "When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning," we proceed to the second step, and "look to the statute's legislative history and the historical circumstances behind its enactment." (*Ibid.*) "In this step, courts may 'turn to secondary rules of interpretation, such as maxims of construction, "which serve as aids in the sense that they express

13

familiar insights about conventional language usage." ' " (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 787 (*Alejo*), quoting *Flannery v. Prentice* (2001) 26 Cal.4th 572, 579 (*Flannery*).)

" 'If ambiguity remains after resort to secondary rules of construction and to the statute's legislative history, then we must cautiously take the third and final step in the interpretive process. [Citation.] In this phase of the process, we apply "reason, practicality, and common sense to the language at hand." [Citation.] Where an uncertainty exists, we must consider the consequences that will flow from a particular interpretation.' " (*Alejo, supra*, 212 Cal.App.4th at p. 788.)

We start with the text of section 872.040 and give its words "a plain and commonsense meaning." (*Flannery, supra*, 26 Cal.4th at p. 577.) In doing so, we do not "consider the statutory language in isolation"; "[r]ather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision[.]' " (*Id.* at p. 578.) There can be no dispute that section 872.040 is a clear expression of legislative intent in its inclusion of two sweeping terms: "*Nothing* . . . excuses compliance with *any* applicable laws[.]" (Italics added.) The use of the word "Nothing" leaves no room for interpretation. Use of the term "any" to modify the words "applicable laws" demonstrates that the Legislature intended the law to have a broad sweep and thus include both indirect as well as direct laws and regulations "governing the division, sale, or transfer of property." (§ 872.040; see *Pineda v. Williams–Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 533 [Legislature's use of the word "any" suggests it intended a broad construction]; *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 920 [same].) There can also be no dispute that the Enforcement of Judgments Law "govern[s] the division, sale, or transfer of property" (§ 872.040) in that

14

it, for example, prescribes rules regarding the creation and duration of a judgment lien on real property (§ 697.310) and specifies the manner and method of execution, levy, sale, and collection (e.g., §§ 699.010 [Enforcement of Money Judgment by Writ of Execution], 700.015 [Real Property; Copies of Writ and Notice of Levy; Recording; Service and Posting], 701.540 [Notice of Sale of Interest in Real Property; Service, Mailing and Posting; Publication; Notice to Lienholders], 701.660 [Deed of Sale; Recordation]).

Although we conclude the language of the statute is conclusive as to the intent of the Legislature, we find support upon reading section 872.040 in context. The section immediately preceding it is section 872.030, which provides that, unless inconsistent with the provisions of the title, "[t]he statutes and rules governing practice in civil actions generally apply" to partition actions. The comments to section 872.030 highlight that "this title contains some special procedural provisions that apply to partition despite general rules to the contrary." (Cal. Law Revision Com. coms., 17A pt. 2 West's Ann. Code Civ. Proc. (2015 ed.) foll. § 872.030, p. 149 [1976 Addition].) The existence of these "special procedural provision[s]" in the context of statutes and rules governing civil practice and the failure to set up a similar carve out with respect to laws governing property transactions suggests there was no intent by the Legislature to exclude compliance with the laws governing those transactions. (Cf. *Muehleisen v. Forward* (1935) 4 Cal.2d 17, 19.)

Our conclusion is buttressed by the legislative history of this section. When the Legislature revised the partition statutes in 1976, it added section 872.040 to ensure that the courts and parties complied with the Subdivision Map Act (Gov. Code, § 66410 et seq.) and local zoning laws and regulations. (Stats. 1976, ch. 73, § 6, pp. 110–111; *Wells Fargo Bank v. Town of Woodside*

(1983) 33 Cal.3d 379, 388, fn. 10.)  In commenting upon this statute at the time of its adoption, the Assembly Legislative Committee observed that: "Section 872.040 codifies the rule that the partition statute cannot be used to avoid any applicable laws governing property transactions.  See, e.g., *Pratt v. Adams*, 229 Cal.App.2d 602, 40 Cal.Rptr. 505 (1964) (Subdivision Map Act).  Whether a particular law, regulation, or ordinance is applicable in a partition action is determined by the terms or a construction of that law, regulation, or ordinance." (Legis. Com. coms.–Assem., 17A pt. 2 West's Ann. Code Civ. Proc. (2015 ed.) foll. § 872.040, p. 150 [1976 Addition].)

We find even further support for our reading of section 872.040 in the legislative history of the Enforcement of Judgments Law, which was enacted in 1982.  The well-established presumption is that the Legislature, when amending a law or enacting a new law, is aware of and takes into consideration existing law.  (*People v. Overstreet* (1986) 42 Cal.3d 891, 897 ["the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "in the light of such decisions as have a direct bearing upon them" ' "].)

Prior to its 1982 enactment, California law provided two methods by which a judgment creditor could extend the enforcement period of a money judgment.  Under former section 684, after entry of the judgment, the judgment creditor was entitled to a writ of execution regarding the judgment for a 10-year period.  (8 Witkin, Cal. Procedure (5th ed. 2020) Enforcement of Judgment, § 22, pp. 60–61.)  Once the 10-year period ended, former section 685 permitted the trial court to enforce the judgment upon a showing by the judgment creditor that there had been an "excusable failure" to seek satisfaction of the judgment.  (*Alonso Inv. Corp. v. Doff* (1976) 17 Cal.3d 539,

16

543–544 (*Alonso*), italics omitted; 8 Witkin, *supra*, Enforcement of Judgment, § 22, pp. 60–61.)  This "[d]iscretionary enforcement had no time limit."  (8 Witkin, *supra*, Enforcement of Judgment, § 22, pp. 60–61.)

In addition, the judgment creditor was entitled to commence an independent action on the judgment within the 10-year limitation period defined in section 337.5.  (*Alonso*, *supra*, 17 Cal.3d at p. 545; *United States Capital Corp. v. Nickelberry* (1981) 120 Cal.App.3d 864, 866.)  If the judgment creditor began an action within this period, "the creditor's right to recover remain[ed] alive, even though the 10–year period . . . subsequent[ly] expire[d]."  (*Alonso,* at p. 545.)

In enacting the Enforcement of Judgments Law, the Legislature abrogated the first method of extending the period for the enforcement of a judgment, and replaced the method with the renewal procedure we previously described (pt. I.A.1, *ante*).  The Law Revision Commission explained:  "Renewal under this article permits enforcement of a judgment beyond the 10–year period prescribed by Section 683.020.  This procedure supersedes the procedure under former Section 685 pursuant to which a judgment could be enforced upon noticed motion after the expiration of 10 years in the discretion of the court upon a showing of the reasons for failure to enforce the judgment during the first 10 years.  This article does not require the judgment creditor to demonstrate diligence in enforcing the judgment, but if renewal is not accomplished within 10 years after entry of the judgment, the judgment becomes unenforceable."  (Law Revision Com. coms., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 683.110, p. 158 [1982 Addition].)  The Legislature otherwise retained the second method of extending the period for enforcing a judgment (§ 683.050), and linked the method to the provision governing the vacatur of a renewed judgment.

Pentech's argument ostensibly relies on the abrogated method of former section 681 for extending the period of enforcement of a judgment. In other words, Pentech contends the period of enforcement of its expired judgment should be extended because, even though it was deemed the priority lien holder, it has been unable to satisfy its judgment before its expiration through no fault of its own. But this is no longer the law. As the Law Revision Commission's comments to section 683.020 provide: "Unlike former Section 681, the 10-year period provided by Section 683.020 is not extended because enforcement of the judgment has been stayed or enjoined by court order or by operation of law. Nor is the 10-year period tolled for any reason." (Cal. Law Revision Com. coms., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 683.020, p. 151 [1982 Addition].)

In this case, the stipulated interlocutory judgment ordered partition by a sale of the subject parcels of real property, and Pentech's interest in the sales was by virtue of its judgment lien. By its plain terms, section 872.040 mandated Pentech's compliance with the renewal provisions of the Enforcement of Judgments Law despite the trial court's November 2015 priority lien determination. Had Pentech renewed, the priority of its judgment lien would have related back to the date of the earlier judgment lien. (12 Miller & Starr, Cal. Real Estate (4th ed. 2020) § 42:61.) Instead, Pentech's failure to renew automatically extinguished the judgment lien. (§ 683.020, subd. (a) ["The judgment may not be enforced."]; 8 Witkin, Cal. Procedure (5th ed. 2020) Enforcement of Judgment, § 67, p. 110 ["A judgment lien cannot exist apart from the judgment."]; *Beneficial Financial, Inc. v. Durkee* (1988) 206 Cal.App.3d 912, 916–917 [judgment lien extinguished when not renewed].) The extinguishment was an effect of Pentech's failure to

18

renew the judgment, not a result of a court order.  The trial court did not err in giving recognition to this statutory bar.

## II.

### *The B Street Parcel*

In the alternative, Pentech argues that it is entitled to a portion of the proceeds from the sale of the B Street parcel because it closed escrow before Pentech's judgment expired.  We are unconvinced.

The parties agreed in the stipulated interlocutory judgment to have Tran's sales proceeds "placed in escrow and shall only be released upon order or final judgment of this court."  (§ 873.600 ["Notwithstanding any other provision of this title, the court shall order sale by such methods and upon such terms as are expressly agreed to in writing by all the parties to the action."].)  The trial court's order approving the sale of the B Street parcel similarly ordered that "[t]o the extent creditor is entitled to receive money from the sale proceeds, creditor will be paid post-closing from a separate court monitored and controlled account by a further order to be decided by the court in conjunction with the partition action."

In compliance with these orders, the sale proceeds from the B Street parcel were placed in an escrow account.  Having stipulated to a delayed disbursement of these proceeds, Pentech was awaiting collection when its judgment expired.  Pentech's claim of entitlement to these funds is undermined by the fact that, upon expiration of its judgment, it is barred from any "further action, including . . . collection . . . pursuant to the judgment."  (Cal. Law Revision Com. coms., 16B West's Ann. Code Civ. Proc. (2009 ed.) foll. § 683.020, p. 151 [1982 Addition].)  Accordingly, Pentech is not entitled to any portion of the proceeds from the sale of the B Street parcel.

19

# III.

## *Pentech's Equitable Arguments*

Lastly, Pentech argues the judgment should be reversed and the matter remanded to the trial court so it can address Pentech's equitable arguments, including constructive lien, equitable lien, post-judgment contracts, novation, accord and satisfaction, and promissory estoppel. Pentech concedes that it raised these arguments for the first time in its objections to Roski's proposed statement of decision.

Because Pentech fails to support its claim of error with any argument or case citation, we may deem the argument waived. (*Utility Consumers' Action Network v. Public Utilities Com.* (2010) 187 Cal.App.4th 688, 697.)

Even if we were to reach Pentech's claim, we would conclude it lacks merit. Under section 632, a "request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." Accordingly, objections to a statement of decision serve a limited purpose: "If a statement of decision fails to resolve a controverted issue, the parties identify that issue in objections to the statement of decision. [Citation.] A statement of decision, however, covers only issues litigated in the case." (*Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 750–751, citing *Crews v. Johnson* (1962) 202 Cal.App.2d 256, 259 [court properly made no finding on issue neither raised in any pleading nor at issue in case]; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1259 [court's failure to address issue in statement of decision explained by party's failure to raise it]; see also § 632.) Pentech's objections to the proposed statement of decision was premised on new arguments and not a controverted issue previously argued and briefed by the parties. Therefore, the trial court did not err in finding them "not appropriate."

## DISPOSITION

The judgment is affirmed.  Roski shall recover its costs on appeal.


DO, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.